[No. F010337. Fifth Dist. Oct. 12, 1988.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
ERVIN H. HOLVEY et al., Real Parties in Interest.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I.

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Ben Johnson, Maureen Daly and George M. Hendrickson, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Stammer, McKnight, Barnum & Bailey, Jerry D. Jones, Bruce Smith, Nuttall, Berman & Magill, Richard P. Berman and Dale Blickenstaff for Real Parties in Interest.

Catherine I. Hanson, Astrid G. Meghrigian and Audrey L. Covner as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**HAMLIN, J.**—The People ask this court to review an order of respondent court that writs of prohibition and mandamus issue to protect the real parties in interest from prosecution under Penal Code section 368, subdivision (a),[1] in the form it was effective during 1985,[2] for endangering the person or health of a dependent adult in their care and custody.

The threshold question to be considered is whether writ relief is available to the People against real party in interest Howard R. Kennett, M.D. In addition, we are required to decide, as an issue of first impression, whether section 368, subdivision (a), is unconstitutionally vague in its application to the charges against real parties. We will conclude that writ relief is available to the People and that the charges against real parties are under only one of the three clauses in section 368, subdivision (a), which clause is not unconstitutionally vague in its application in this case.

### PROCEDURAL BACKGROUND

On September 2, 1987, a complaint was filed against defendants Ervin H. Holvey, Miriam Sommers and Howard R. Kennett (real parties in interest herein). Count I charged Holvey and Sommers with a violation of section 192, subdivision (b), involuntary manslaughter, arising out of the death of Beulah Mae Sanders. Count II was against all defendants, and alleged that between January 18, 1985, and April 10, 1985, the defendants "while having the care and custody of an elderly dependent adult, did willfully and feloniously, under circumstances likely to cause great bodily harm or death,

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] The acts alleged to constitute a violation of section 368, subdivision (a) occurred between January 18, 1985, and April 10, 1985. Thus, the version of this code section in effect in 1985 applies and the provisions of the 1985 version only are quoted and discussed unless otherwise expressly stated.

permit the person or health of Beulah Mae Sanders to be injured," in violation of Penal Code section 368, subdivision (a).

Defendant Kennett demurred to the complaint in municipal court alleging that section 368 is so unclear that no one could understand what is prohibited thereby. The demurrer specifically attacked several phrases in the statute as vague, and in particular attacked such phrases as applied to medical practitioners. The remaining defendants joined in the demurrer; the municipal court overruled it.

Real parties in interest then filed in respondent court a petition for writ of prohibition/mandate and request for stay of the preliminary hearing, re-alleging the same matters argued in municipal court. On May 11, 1988, respondent court filed its opinion finding section 368, subdivision (a), unconstitutionally vague and uncertain. The court ordered that a writ of prohibition issue restraining all persons from taking further steps or proceedings relating to count II of the complaint. It also ordered that a writ of mandate issue compelling the municipal court to vacate its previous order overruling real parties' demurrer and to make a new and different order granting real parties' demurrer and dismissing count II of the complaint.

In response to respondent court's action, the People filed in this court a petition for writ of prohibition and/or mandate and an application for stay of all proceedings.

On May 16, 1988, this court entered its order staying the writs granted by respondent court. Our order did not restrain the municipal court from proceeding with the preliminary examination.

On June 16, 1988, this court ordered respondent court to show cause on September 20, 1988, why the relief prayed for should not be granted.

Real parties in interest have filed responses opposing the petition of the People. The California Medical Association (CMA) was granted permission to file an amicus brief in support of real parties in interest.[3]

---

[3] There are no facts before this court other than the allegations in the complaint; therefore, CMA's factual contentions will not be discussed. Respondent court's opinion did note that real parties in interest Holvey and Kennett are doctors and Sommers is a nurse.

DISCUSSION

I. *Can this court properly grant writ relief to the People as to real party in interest Kennett?**

. . . . . . . . . . . . . . . . . . . .

II. *Is the 1985 version of section 368 unconstitutionally vague in its general scope, and in particular when applied to medical practitioners?*

Real parties in interest were charged with violating section 368, subdivision (a), which at all relevant times provided in pertinent part: "(a) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any dependent adult, with knowledge that he or she is a dependent adult, to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any dependent adult, willfully causes or permits the person or health of the dependent adult to be injured, or willfully causes or permits the dependent adult to be placed in a situation such that his or her person or health is endangered, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison for two, three, or four years."

In 1986 the statute was amended. The significant amendments were that the statute no longer speaks only of dependent adults but now includes "elder" or "dependent adults" within its ambit. Subdivisions (d) and (e) define the terms "elder" and "dependent adult," respectively.

Respondent court found that section 368, subdivision (a), was unconstitutionally vague as it applies to medical arts practitioners. In particular, the court found that: (1) A physician could willfully cause or permit a patient to "suffer" when in fact he or she was pursuing professionally acceptable conduct; (2) a physician often causes unjustifiable physical pain or mental suffering during the course of medically approved treatment; (3) a physician often willfully causes or permits a patient's health to be in danger (for example, major surgery, emergency operations, chemotherapy); (4) it is not clear from the legislative intent that those rendering medical treatment were intended to be subject to the provisions of the code; (5) the term "dependent adult" is ambiguous; and (6) the case of *People* v. *Smith* (1984) 35 Cal.3d

---

* See footnote, *ante,* page 51.

798 [201 Cal.Rptr. 311, 678 P.2d 886] is inapplicable to section 368, subdivision (a).

Real parties in interest make no new arguments and assert that the superior court's opinion is correct.

The CMA agrees with the trial court's reasoning and also argues that: (1) the Attorney General is improperly prosecuting a physician for professional negligence rather than criminal negligence (CMA asserts there is no allegation of aggravated or wanton conduct); (2) the average adult understands the concept of unconsented to or unjustified touching and therefore knows when his or her conduct falls within that proscribed by law, but this is not so with the health care practitioner; (3) health care practitioners are meant to assist in enforcing the law and not meant to be prosecuted for good-faith treatment decisions; and (4) the statute is overbroad because it infringes on protected activity.

Assuming that the statute is applicable to health care providers, CMA argues that as to health care providers there must be a showing of criminal negligence and such a showing must be based on a gross departure from ordinary standards of care. Finally, CMA asserts that holding physicians liable for professional decisions will impose a chilling effect on the delivery of health care.

With the exception of the case of *People* v. *Hawkins** (Cal.App.), there are no cases interpreting section 368 (either the 1985 version or subsequent versions). *Hawkins* is no longer citable authority because a rehearing was granted.[4] Thus, this court's interpretation of section 368 is an issue of first impression.

We begin our analysis by breaking down section 368, subdivision (a), into three clauses. Real parties in interest are charged only under the second clause and we therefore confine our analysis to that clause.

As previously set forth, count II alleged a violation of section 368, subdivision (a), in the following language: "[B]etween January 18, 1985, and April 10, 1985, at and in the County of Fresno, State of California, the crime of Endangering the Person and Health of an Elderly Dependent

---

* Reporter's Note: Rehearing granted, June 17, 1988 (A035669, A036752).

[4] CMA relies on *Hawkins* and states that it can still properly be relied upon by this court under the theory of collateral estoppel. Assuming for the sake of argument that collateral estoppel could be applied, this assertion must fail for the obvious reason that when a rehearing is granted it is as if the original opinion never existed. There is no opinion now in existence to rely upon.

Adult, in violation of Penal Code section 368(a), a FELONY, was committed by Ervin H. Holvey, Miriam Sommers, and Howard R. Kenneth [*sic*], who, while having the care and custody of an elderly dependent adult, did willfully and feloniously, under circumstances likely to cause great bodily harm or death, permit the person or health of Beulah Mae Sanders to be injured."

The code section breaks down into three separate categories. All three parts require that the defendant act or fail to act under circumstances or conditions likely to produce great bodily harm or death. The first part of the statute is meant to pertain to all three categories and distinguishes it from subdivision (b), which applies to those "circumstances or conditions other than those likely to produce great bodily harm or death." (See also § 273a.)

Subdivision (a) is then broken down into three separate parts (all subject to the first clarifying language just discussed). They are: (1) any person who "willfully causes or permits any dependent adult, with knowledge that he or she is a dependent adult, to suffer, or inflicts thereon unjustifiable pain or mental suffering;" (2) any person who "having the care or custody of any dependent adult, willfully causes or permits the person or health of a dependent adult to be injured"; and (3) any person having the care and custody of a dependent adult who "willfully causes or permits the dependent adult to be placed in a situation such that his or her person or health is endangered."

The complaint clearly charges a violation of part (2) above. Thus, the ruling of the trial court analyzing other portions of the statute, for example, the terms "suffer" and "endanger," is superfluous to the issue posed to this court. This applies equally to the arguments of the CMA that apply to the other clauses.

The superior court found the term "elderly" as used in the complaint to be superfluous. The People agree. Since the defect could be corrected and the People would be entitled to amend the complaint to delete this superfluous term, we also disregard it. We also note that the People should be allowed to amend their complaint to make the requisite allegation that real parties in interest had knowledge that Beulah Mae Sanders was a dependent adult. (§ 1007.)

As the California Supreme Court pointed out in *Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 269 [198 Cal.Rptr. 145, 673 P.2d 732]: "Both article I, section 7, of the California Constitution and the Fourteenth Amendment to the United States Constitution declare that no person shall be deprived of life, liberty or property without due process of law. It has been recognized for over 80 years that due process requires inter alia some level of definiteness in criminal statutes. [Citation.] ■ Today it is established

that due process requires a statute to be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt."

The court then observed: " 'Fair notice' requires only that a violation be described with a ' "reasonable degree of certainty" ' [citation] so that 'ordinary people can understand what conduct is prohibited.' [Citation.] The notice provided must be such that prosecution does not 'trap the innocent' without 'fair warning.' [Citation.]" (35 Cal.3d at pp. 270-271.)

In *People* v. *Smith, supra,* 35 Cal.3d 798, our Supreme Court determined the constitutionality of section 273a, the child abuse statute. Here, respondent court found that *Smith* was inapplicable to cases involving section 368, subdivision (a), because *Smith* involved a different protected class (children versus dependent adults) and *Smith* found section 273a to not be constitutionally vague on the basis of stare decisis and the cases relied upon by the Supreme Court only addressed the first and third clauses.

Respondent court was only partially correct. Section 368 was written to virtually mirror section 273a, the child abuse statute. The latter provides: "(1) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison for 2, 4, or 6 years."

Respondent court was correct in its holding that *Smith* is not controlling on whether section 368 is void for vagueness because *Smith* involves a different protected class. But it is not controlling only to the extent section 273a involves a child and section 368 involves a dependent adult.

Respondent court was incorrect in finding that the holding in *Smith* was based solely on stare decisis. The *Smith* court stated: "The statutes in issue have withstood similar constitutional challenges in the Courts of Appeal. A number of decisions have held that section 273a, subdivision (1), is not void for vagueness [citations], while others have so held as to section 273d [citations]. Defendant ignores fully half of these authorities, and only cursorily mentions the remainder. Under the doctrine of stare decisis, accordingly, we give the cited holdings great weight." (*People* v. *Smith, supra,* 35 Cal.3d at p. 810.)

■ The *Smith* court went on to state: "*Moreover,* we agree that these statutes are not so uncertain or indefinite as to render them invalid: they provide both notice to those whose activities are proscribed and guidance for the courts called on to apply them." (35 Cal.3d at p. 810, italics added.) The latter statement by the *Smith* court is a holding that all of section 273a is not unconstitutionally vague. The language of the entire statute passes constitutional muster. Inasmuch as section 368 mirrors the language of section 273a, it is "not so uncertain or indefinite" to be invalid and provides "notice to those whose activities are proscribed and guidance for the courts called on to apply" it. (35 Cal.3d at p. 810.) It is clear that the Legislature intended this result, as it is stated in the legislative history more than once that this statute contains language identical to the child abuse statute.

Real parties in interest, CMA, and respondent court are of the opinion that medical practitioners are in a class of their own and should receive more guidance as to what conduct is prohibited before they are subject to the criminal sanctions of the section.

The simple answer is that *Smith* found the statute to be constitutional "to those whose activities are proscribed," meaning parents, teachers, plumbers, lawyers, doctors, etc. Everyone, regardless of his or her professional calling, has adequate notice. A more careful analysis results in the same finding.

Although section 273a does not require a specific intent, it does require proof of criminal negligence. ■ Criminal negligence "means that the defendant's conduct must amount to a reckless, gross or culpable departure from the ordinary standard of due care; it must be such a departure from what would be the conduct of an ordinarily prudent person under the same circumstances as to be incompatible with a proper regard for human life." (*People* v. *Peabody* (1975) 46 Cal.App.3d 43, 48-49 [119 Cal.Rptr. 780].) The same proof is required for a conviction under section 368. ■ Real parties in interest's argument that many of their practices result in pain and injury and they would be unable to distinguish criminal acts from good-faith acts or acts resulting in only civil liability is unavailing. To violate section 368, their conduct must be "a reckless, gross or culpable departure from the ordinary standard of due care." Under this standard, physicians, as well as anyone else, should be able to distinguish criminal behavior versus noncriminal behavior. Statutes must be given a "*common sense* interpretation." (*People* v. *Peabody, supra,* at p. 48.) A commonsense interpretation of "injury" as used in this section, applies not to injuries such as would be inflicted on a patient by a medical care practitioner using ordinary care in the course of treatment, but applies to nontherapeutic conduct or gross, reckless or culpable departures from the ordinary standard of care. (See Minn. Stats., pt. V, ch. 626.557, subd. (2)(d)(2).)

Analogizing dependent adult abuse cases to child abuse cases brings to light the flaw in real parties' argument. In *In re Maria R.* (1976) 64 Cal.App.3d 731 [135 Cal.Rptr. 2] a hearing was held to terminate Maria's parental rights because she violated section 273a.

"The record shows no more than that a 16-year-old girl, acting on the advice of her mother, ignorantly gave to her baby too much aspirin too often and that she ignorantly provided food which the diagnosing doctor regarded as nutritionally insufficient. The expert testimony was clear that the effect of the combined dosage and diet would not become evident until after a substantial period of time; it is admitted that, as soon as the baby exhibited signs of illness, Maria and her mother sought medical advice and treatment." (64 Cal.App.3d at p. 734.) The court held that this action was not enough to constitute a violation of section 273a. Parents sometimes make mistakes that are detrimental to their child's health or that injure their child, but no such parent will be charged with and convicted of child abuse unless he or she is criminally negligent.

The similarities are strong between a parent removing a splinter from his or her child's finger and a medical practitioner performing a medically necessary operation on a dependent adult, versus a parent allowing his child to live in an incredibly filthy environment (*People* v. *Harris* (1966) 239 Cal.App.2d 393 [48 Cal.Rptr. 677]) and a medical practitioner failing to provide a dependent adult with necessary health care or supervision. All situations result in pain and injury, but only the latter type could possibly result in criminal liability. Real parties and CMA's argument that each practitioner is left to wonder, under the terms of the statute, what aspects of his or her conduct violate the section and what do not is simply not convincing.

Respondent court and CMA believe it is not clear that those rendering medical treatment were to be subject to the provisions of section 368. The simple answer to this is there is nothing in the statute or its legislative history that demonstrates an intent to exempt medical practitioners from the ambit of the statute. In fact, the Legislature enacted section 368 to alleviate problems of prosecutors who receive reports of abuse or neglect and have difficulty finding a code section under which they can prosecute. Medical practitioners, who are often in charge of the care and custody of a dependent adult, would seem to be one of the prime target groups at which the statute is aimed. The mere fact medical practitioners are required to report this type of treatment should not relieve them from criminal liability any more than a school teacher who is required to report child abuse yet also abuses the child.

It is also argued that the statute is overbroad and prohibits constitutionally protected conduct. ■ "Statutes which prohibit constitutionally protected conduct are said to be overbroad and their enforcement may constitute a denial of due process. [Citations.] Nonetheless, a statute that has some restrictive effect upon protected activities may be valid, if it vindicates important interests of society." (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 493-494 [134 Cal.Rptr. 630, 556 P.2d 1081].)

Perhaps the statute could be interpreted to result in medical practitioners being more cautious in treating dependent adults. Yet, in light of the strong public policy to protect vulnerable adults who are subject to unjustified abuses, the restrictions are minimal in contrast to a vindication of important interests of society. The statute is not overbroad.

■ Finally, the term "dependent adult" is attacked as being vague. "Dependent adult," as defined in the 1985 statute, means: "(d) . . . a person who, because of any mental disability due to birth defect, physical disorder, or advanced age, is unable to properly provide for his or her own personal needs with regard to his or her physical health, food, clothing, or shelter, or is substantially unable to manage his or her own financial resources or to resist fraud or undue influence."

Although it could be argued that the categories of dependent adults are persons who are "unable to properly provide for [their] own personal needs with regard to [their] physical health, food, clothing, or shelter, or is substantially unable to manage his or her own financial resources or to resist fraud or undue influence" because of (1) a mental disability due to birth defect, (2) a physical disorder, or (3) advanced age, it could also be argued that the three categories are: (1) mental disability due to birth defect, (2) mental disability due to physical disorder, or (3) mental disability due to advanced age. "Where the statute is susceptible of two reasonable constructions, . . . a defendant is ordinarily entitled to that construction most favorable to him." (*Bowland* v. *Municipal Court, supra,* 18 Cal.3d 479, 488.) Because the second construction is more restricted, it is more favorable to the defendant and should be the construction used. Accepting this definition, it does not seem logical that the definition given to the term "dependent adult" in this section is vague merely because "dependent adult" is defined differently in other code sections dealing with other matters. Giving to the words their commonsense meaning, the section 368 definition is a complete definition providing adequate notice to persons of common intelligence as to who is a dependent adult.

We conclude that the second category of criminal behavior under section 368, subdivision (a), is not unconstitutionally vague or overbroad as applied

to any individuals, including medical practitioners. The petition for a peremptory writ is granted. The stay issued by this court on May 16, 1988, shall remain in effect only until this opinion is final in all courts of this state, the Supreme Court grants a hearing herein, or the trial court complies with the above-stated directions. Respondent court is directed to vacate its order of May 11, 1988, granting the real parties' petition for writ of prohibition/mandate and enter a new order denying the writ.

Martin, Acting P. J., and Stone (W. A.), J., concurred.

A petition for a rehearing was denied November 7, 1988, and the petition of real parties in interest for review by the Supreme Court was denied December 8, 1988. Mosk, J., Panelli, J., and Kaufman, J., were of the opinion that the petition should be granted.