[No. F013287. Fifth Dist. Jan. 14, 1991.]

In re ANDRE P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ANDRE P., Defendant and Appellant.

COUNSEL

Kimball J. P. Sargeant, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Michael J. Weinberger and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ARDAIZ, J.—A supplemental petition filed October 3, 1989, alleged the minor, Andre P., "on or about October 2, 1989, did willfully and unlawfully resist, delay and/or obstruct a public officer of the City of Bakersfield, to wit: Officer L. Mills in the discharge and/or the attempt to discharge a duty of his office; thereby violating Section 148 of the Penal Code . . . ."[1] The supplemental petition alleged his violation brought Andre within Welfare and Institutions Code sections 602 (count I) and 777, subdivision (a) (count II). At a contested jurisdictional hearing held December 1, 1989, the Kern County Juvenile Court found true both counts of the October 3, 1989, petition. At the dispositional hearing held December 15, 1989, the court committed Andre to the California Youth Authority. On January 3, 1990, Andre filed a notice of appeal from the "jurisdictional hearing" and the "dispositional orders."

### FACTS

At approximately 2 a.m. on October 2, 1989, Bakersfield Police Officer Lonnie Mills was patrolling Lakeview Avenue in a marked patrol car. Lakeview Avenue is a high crime area, with much violence and drug activity. Mills saw Andre and another juvenile standing in front of a hamburger stand. Andre looked to be about 14 to 16 years old. Deciding to talk to him about an apparent curfew violation, Mills alighted from his vehicle. As soon as he exited, Andre started running. Mills ran after him, shouting several times, "Police Officer. Stop. Stop running." During the chase, Mills saw Andre reach into his waistband and discard what later proved to be a toy handgun and a baggie containing an off-white, chunky substance.[2] Andre surrendered after running approximately 150 yards.

Andre, age 14, testified he knew about and violated the 10 p.m. curfew. He admitted walking away when he saw the police car arrive. He ran because he always runs from law enforcement and feared being arrested for having the toy gun. He heard Officer Mills tell him to stop during the chase.

The minor raised no constitutional challenge to section 148, either as written or as applied. Both sides submitted the matter without argument. The court noted Andre's testimony "basically amounts to a lengthy confession as to the violation because he knew the police were there. By his own statement he ran to avoid being contacted by them." The court reasoned:

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The baggie containing the "off-white, chunky" substance was not recovered.

"When one flees from an officer who is conducting a legitimate investigation, which this officer clearly was under these circumstances, that constitutes delaying or obstructing the officer in the performance of his duty because the officer used up his time to chase down this person and to conduct the investigation."

The above facts show a garden-variety section 148 violation, strongly reminiscent of a case out of this court: *People* v. *Allen* (1980) 109 Cal.App.3d 981 [167 Cal.Rptr. 502] (defendant ran and hid from officers he suspected were going to detain him; held: his actions delayed the performance of their duties and created probable cause to arrest for violating section 148). (Cf. *In re Gregory S.* (1980) 112 Cal.App.3d 764 [169 Cal.Rptr. 540].) Andre does not suggest otherwise. Instead, for the first time, he contends section 148 "is unconstitutionally overbroad, significantly impinging on the right to free speech. The statute in question cannot be construed so as to eliminate its unconstitutionality; accordingly, it is facially invalid. Thus, regardless whether the *application* of section 148 to appellant may have been constitutional, the finding that the allegations of the supplemental petition were true must be reversed."[3] (Italics in original.)

We affirm.

## DISCUSSION

### I

### A. SHOULD APPELLANT'S CHALLENGE TO THE STATUTE ON GROUNDS OF OVERBREADTH BE REJECTED BECAUSE OF FAILURE TO RAISE THE ISSUE IN THE TRIAL COURT?

Neither party has raised the issue that appellant brought no constitutional challenge to section 148 in the trial court. The consequences of failure to raise an overbreadth claim are in some question. ■ As noted by Witkin, there is a general rule against considering points on appeal not raised in the trial court. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 311, 315, pp. 321-322, 326-327 [discussion of rule and exceptions].) The application of this rule to foreclose a constitutional challenge on appeal has been the subject of dispute.

In *City of Grand Forks* v. *Cameron* (N.D. 1989) 435 N.W.2d 700, the North Dakota Supreme Court refused to consider a similar overbreadth

---

[3] In pertinent part, section 148 states: "Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his . . . office or employment, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not exceeding one year, or by both such fine and imprisonment."

claim. "The facial validity of the ordinance was not raised in the trial court. Generally, issues not raised below, even constitutional issues, will not be addressed on appeal. *State* v. *Miller*, 388 N.W.2d 522 (N.D. 1986). The alleged error does not rise to the level of obvious error (*State* v. *Miller*, *supra*), and we will not address it." (*Id*. at p. 702; *City of Bismarck* v. *Nassif* (N.D. 1989) 449 N.W.2d 789, 792-793 [challenge to facial validity of one subsection of disorderly conduct ordinance not raised in trial court and, therefore, not addressed on appeal]; contra, *State* v. *Williams* (1987) 205 Conn. 456 [534 A.2d 230, 232-233] [challenge to general statute proscribing interference with a police officer raised, and addressed, for the first time on appeal: "While we ordinarily need not review issues raised for the first time on appeal, we have long held that appellate consideration is proper for claims that implicate fundamental constitutional rights and a fair trial, and are adequately supported by the record. [Citation.]"].)

Respondent does not challenge appellant's standing. We reject, *post*, appellant's contention that section 148 is overbroad on its face and therefore, unconstitutional. As will be explained in the body of this opinion, that will resolve the question of appellant's standing to test the constitutionality of section 148 on these facts. Thus, we do not further discuss, or decide, in this action, the issue of appellant's standing to raise a constitutional issue on appeal without first having preserved the issue in the trial court.

B. DOES APPELLANT HAVE STANDING TO CHALLENGE THE STATUTE FOR OVERBREADTH WHERE THE ACTUAL APPLICATION IS NOT CONSTITUTIONALLY PROTECTED?

The focus of appellant's challenge to section 148 is his contention that it is constitutionally overbroad, significantly impinging on the right to free speech. While appellant does not, and clearly could not, reasonably maintain his conduct constituted speech, he argues the overbreadth of the statute renders it facially invalid. As such, he concludes that since the statute is invalid, his conviction must be reversed.

Normally, the traditional evaluation of constitutional challenge follows the principle "that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in situations not before the Court. [Citations.]" (*Broadrick* v. *Oklahoma* (1973) 413 U.S. 601, 610 [37 L.Ed.2d 830, 839, 93 S.Ct. 2908].) Appellant, however, relies upon the proposition that a challenge for overbreadth reaching protected First Amendment activity does not require the activity in question be protected.

"Such review is permitted in these circumstances [i.e., when a law is challenged on its face as substantially encroaching on First Amendment

protected activity] because case-by-case adjudication may not fully vindi-
cate the constitutional rights at stake. The actual application of an over-
broad ordinance is not its only vice; it may also have a substantial deterrent
impact or 'chilling effect' on the exercise of constitutional rights. Faced with
a regulation that threatens to impose sanctions upon free speech or the free
exercise of religion, significant numbers of persons may elect not to exercise
those rights rather than undergo the rigors of litigation and the risk of
eventual punishment. While it is crucial that persons not be punished for
having exercised their rights of free speech and religion, it is equally impor-
tant that they not be deterred from such conduct. In this regard the United
States Supreme Court has stated: 'Because of the sensitive nature of consti-
tutionally protected expression, we have not required that all of those sub-
ject to overbroad regulations risk prosecution to test their rights. For free
expression—of transcendent value to all society, and not merely to those
exercising their rights—might be the loser. [Citation.] For example, we have
consistently allowed attacks on overly broad statutes with no requirement
that the person making the attack demonstrate that his own conduct could
not be regulated by a statute drawn with the requisite narrow specificity.
[Citations.] We have fashioned this exception to the usual rules governing
standing . . . because of the ". . . danger of tolerating, in the area of First
Amendment freedoms, the existence of a penal statute susceptible of sweep-
ing and improper application." *NAACP* v. *Button* [(1963) 371 U.S. 415, 433
. . . )]. If the rules were otherwise, the contours of regulation would have to
be hammered out case by case—and tested only by those hardy enough to
risk criminal prosecution to determine the proper scope of regulation. [Cita-
tion.] By permitting determination of the invalidity of these statutes without
regard to the permissibility of some regulation on the facts of particular
cases, we have, in effect, avoided making vindication of freedom of expres-
sion await the outcome of protracted litigation.' (*Dombrowski* v. *Pfister*
(1965) 380 U.S. 479, 486-487 . . . .)" (*People* v. *Fogelson* (1978) 21 Cal.3d
158, 163-164 [145 Cal.Rptr. 542, 577 P.2d 677], fns. omitted.)

The standing question in this case, however, is not readily resolved
until the ultimate question of overbreadth is resolved.

"Technically, overbreadth is a standing doctrine that permits parties
in cases involving First Amendment challenges to government restrictions
on noncommercial speech to argue that the regulation is invalid because of
its effect on the First Amendment rights of others not presently before the
Court. [Citation.] Whether the appellee may make use of the overbreadth
doctrine depends, in the first instance, on whether or not it has a colorable
claim that the ordinance infringes on constitutionally protected, noncom-
mercial speech of others. . . ." (*Hoffman Estates* v. *Flipside, Hoffman Es-*

*tates* (1982) 455 U.S. 489, 508 [71 L.Ed.2d 362, 378-379, 102 S.Ct. 1186], White, J., conc. in the judg.)

The Supreme Court explained its rationale very succinctly in *Broadrick*:

"[T]he Court has altered its traditional rules of standing to permit—in the First Amendment area—'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' *Dombrowski* v. *Pfister*, 380 U.S., at 486. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." (*Broadrick* v. *Oklahoma, supra,* 413 U.S. at p. 612 [37 L.Ed.2d at p. 840].)

 In order to demonstrate standing to challenge the facial validity of section 148 on the instant facts, appellant must demonstrate that the alleged overbreadth is not only real, but substantial as well. That is, does section 148 reach a substantial amount of constitutionally protected conduct? (*Houston* v. *Hill* (1987) 482 U.S. 451, 458 [96 L.Ed.2d 398, 409-410, 107 S.Ct. 2502].) We address that issue now.

## II

### IS PENAL CODE SECTION 148 CONSTITUTIONALLY OVERBROAD UNDER THE FIRST AMENDMENT?

 Appellant relies exclusively on *Houston* v. *Hill, supra,* 482 U.S. 451, where the United States Supreme Court held a municipal ordinance that made it unlawful to interrupt a police officer in the performance of his or her duties was unconstitutionally overbroad under the First Amendment. (*Id.* at p. 467 [96 L.Ed.2d at pp. 415-416].) Specifically, the ordinance made it "'unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest.'" (*Id.* at p. 455, fn. omitted [96 L.Ed.2d at p. 408].) The court rejected the "city's principal argument . . . that the ordinance does not inhibit the exposition of ideas, and that it bans 'core criminal conduct' not protected by the First Amendment. . . ." (*Id.* at p. 459 [96 L.Ed.2d at p. 410].)

"First," the court held, "the enforceable portion of the ordinance deals not with core criminal conduct, but with speech. As the city has conceded, the language in the ordinance making it unlawful for any person to 'assault'

or 'strike' a police officer is pre-empted by the Texas Penal Code. . . ." (*Houston* v. *Hill, supra,* 482 U.S. at p. 460 [96 L.Ed.2d at p. 411].) "Accordingly, the enforceable portion of the ordinance makes it 'unlawful for any person to . . . in any manner oppose, molest, abuse or interrupt any policemen in the execution of his duty,' and thereby prohibits verbal interruptions of police officers." (*Id.* at p. 461, fn. omitted [96 L.Ed.2d at p. 411].)

"Second, contrary to the city's contention, the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." (*Houston* v. *Hill, supra,* 482 U.S. at p. 461 [96 L.Ed.2d at p. 412].) The ordinance "is not limited to fighting words nor even to obscene or opprobrious language, but prohibits speech that 'in any manner . . . interrupt[s]' an officer. The Constitution does not allow such speech to be made a crime. The freedom of individuals verbally to oppose or challenge police actions without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." (*Id.* at pp. 462-463, fns. omitted [96 L.Ed.2d at p. 413].)

The court noted that "today's decision does not leave municipalities powerless to punish physical obstruction of police action. . . . [S]uch conduct might constitutionally be punished under a properly tailored statute, . . . What a municipality may not do, however, and what Houston has done in this case, is to attempt to punish such conduct by broadly criminalizing speech directed to an officer—in this case, by authorizing the police to arrest a person who in *any* manner verbally interrupts an officer." (*Houston* v. *Hill, supra,* 482 U.S. at pp. 462-463, fn. 11 [96 L.Ed. 2d at p. 413], italics in original.) Finally, the court found that the Houston ordinance could not be saved by a limiting construction or a severance of "discrete unconstitutional subsections from the rest." (*Id.* at p. 468 [96 L.Ed.2d at p. 416].)

In essence, appellant's argument attempts to force section 148 into the same mold as the *Houston* ordinance. This effort overlooks certain key distinctions.

Central to the decision in *Houston* was the fact that state law preempted coverage of physical acts, leaving an ordinance that prohibited verbal interruptions of police officers. (*Houston* v. *Hill, supra,* 482 U.S. at pp. 460, 469, fn. 18 (6 L.Ed.2d at pp. 411, 416-417].) As the Supreme Court stated, "the enforceable portion of the ordinance deals not with core criminal conduct, but with speech." (*Id.* at p. 460 [96 L.Ed.2d at p. 411].)[4] Section 148 is different. It applies to one "who willfully resists, delays, or obstructs any

---

[4] The court expressly did "not address the question whether the ordinance, if not partially pre-empted, would be substantially overbroad." (*Id.* at p. 461, fn. 9 [96 L.Ed.2d at p. 411].)

. . . peace officer . . . in the discharge or attempt to discharge any duty of his . . . office or employment, . . ."

Attempting an analogy to the preemption conceded in *Houston* v. *Hill*, appellant seizes on section 148's language defining punishment "when no other punishment is prescribed." Listing other statutes criminalizing various physical acts against police officers, he concludes "[a] substantial portion of the remaining conduct embraced by section 148 is constitutionally protected speech."

Appellant frames his argument as follows: "Section 148 is similar to an ordinance found unconstitutionally overbroad by the court in *Houston* v. *Hill*. As with the Houston ordinance, section 148 is only applicable when 'no other punishment is prescribed.' Conduct such as striking a police officer (§ 243), assault on a police officer (§§ 245, subd. (b), 417.8), resisting arrest (§§ 834a-835a), or disobedience of a peace officer (Veh. Code, § 2800) is not within the ambit of section 148. A substantial portion of the remaining conduct embraced by section 148 is constitutionally protected speech. Section 148 subjects any person to criminal prosecution who 'willfully resists, delays, or obstructs' a police officer, while the Houston ordinance made it criminal to 'oppose, molest, abuse or interrupt any police officer [*sic*].' Although the words are different, they are similar in meaning. 'Oppose' may be equated with 'resist' and 'obstruct,' while to 'delay' is similar to 'interrupt.' Such conduct as arguing, talking, interfering, failing to remain quiet, verbally abusing, and walking through a scene had been relied upon to arrest individuals under the Houston ordinance. [Citation.] These activities fit just as easily in the section 148 proscription against resisting, delaying or obstructing a police officer."

Appellant acknowledges that a statute may be interpreted narrowly to avoid overbreadth. ▮ If " 'the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution.' " (*San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 948 [92 Cal.Rptr. 309, 479 P.2d 669], quoting *County of Los Angeles* v. *Legg* (1936) 5 Cal.2d 349, 353 [55 P.2d 206].) ▮ However, he maintains the statute cannot be saved by a narrow construction in that section 148 uses the phrase "resists, delays, or obstructs," and that those terms have a plain meaning which cannot reasonably be construed to exclude constitutionally protected speech as indicated by appellant's definitional source. Appellant notes:

"According to the Random House Dictionary of the English Language (2d ed. 1987) at 1359, 'oppose' means, inter alia, 'to act against or provide

resistance to . . . .' Among its synonyms is 'resist.' 'Delay' means to 'impede the progress of; retard; hinder. . . .' (*Id.* at p. 526.) 'Interrupt' is defined, inter alia, as 'to cause a break or discontinuance; interference with action or speech. . . .' (*Id.* at p. 998.) To 'obstruct' means 'to interrupt, hinder or oppose the passage, progress, course, etc. of.' (*Id.* at p. 1338.)"

Thus, in effect, appellant argues that words alone reasonably can be construed as sufficient to satisfy the elements of resistance or delay or obstruction. We perceive this argument as meaning that a person could engage in speech unaccompanied by conduct that would constitute "resistance" to an officer's performance of duty or delay or obstruct that performance. From this construct, appellant concludes the statute encompasses constitutionally protected speech and is overbroad in its reach. We conclude it is not the statute which overreaches, it is appellant.

At the inception, analysis of appellant's argument must focus upon what the statute clearly encompasses. Section 148 nearly always has been applied to a wide range of conduct beyond speech. (See *In re Gregory S., supra,* 112 Cal.App.3d 764 [walking away from officer attempting detention followed by struggle]; *People v. Allen, supra,* 109 Cal.App.3d 981 [running and hiding from officers attempting valid detention]; *In re Bacon* (1966) 240 Cal.App.2d 34 [49 Cal.Rptr. 322], disapproved on another point in *In re Brown* (1973) 9 Cal.3d 612, 624 [108 Cal.Rptr. 465, 510 P.2d 1017] [going limp upon arrest]; *People v. Derby* (1960) 177 Cal.App.2d 626 [2 Cal.Rptr. 401] [struggling with officers breaking up fight]; *People v. Bugg* (1947) 79 Cal.App.2d 174 [179 P.2d 346] [cursing and kicking officers quelling disturbance]; *People v. Randolph* (1957) 147 Cal.App.2d Supp. 836 [306 P.2d 98] [struggle following failure to produce license or identification after vehicle stop].)

██ As stated in *Houston v. Hill, supra,* 482 U.S. 451, "[o]nly a statute that is substantially overbroad may be invalidated on its face. . . ." (*Id.* at p. 458 [96 L.Ed.2d at p. 410].) ██ Appellant makes no empirical showing that cases involving verbal communications, let alone protected speech, comprise a substantial part of the universe of section 148 prosecutions. In contrast, Hill introduced extensive evidence of the unconstitutional application of the ordinance to protected speech. (*Id.* at p. 457, fn. 5 [96 L.Ed.2d at p. 409].) In *Houston* the court said: "In concluding that the ordinance was overbroad, the Court of Appeals did not err in reviewing evidence ignored by the District Court concerning the application of this ordinance, and in concluding that this evidence demonstrated a significant *potential* for unconstitutional application of the ordinance." (*Id.* at p. 458, fn. 6 [96 L.Ed.2d at p. 410], italics in original.)

In *Hoffman Estates* v. *Flipside, Hoffman Estates, supra,* 455 U.S. 489, the court detailed the scope of a facial challenge for overbreadth:

 "In a facial challenge to the overbreadth and vagueness of a law,[5] a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.[6] If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. . . ." (455 U.S. at pp. 494-495 [71 L.Ed.2d at p. 369], fn. 7 omitted.) Footnotes 5 and 6 provide:

"[5] A 'facial' challenge, in this context, means a claim that the law is 'invalid *in toto*—and therefore incapable of any valid application.' *Steffel* v. *Thompson,* 415 U.S. 452, 474 (1974). In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered. *Grayned* v. *City of Rockford,* 408 U.S. 104, 110 (1972).

 "[6] In making that determination, a court should evaluate the ambiguous as well as the unambiguous scope of the enactment. To this extent, the vagueness of a law affects overbreadth analysis. The Court has long recognized that ambiguous meanings cause citizens to ' "steer far wider of the unlawful zone" . . . than if the boundaries of the forbidden areas were clearly marked.' *Baggett* v. *Bullitt,* 377 U.S. 360, 372 (1964), quoting *Speiser* v. *Randall,* 357 U.S. 513, 526 (1958); see *Grayned, supra,* at 109; cf. *Young* v. *American Mini Theaters, Inc.,* 427 U.S. 50, 58-61 (1976)."

In essence, words in a statute that are vague may reach protected activity, and in that sense, lead to and support a determination of overbreadth.

 In substance, appellant is arguing that the words "resist, delay" and "obstruct" are vague and reasonably may be construed as encompassing protected conduct. However, appellant creates an ambiguity where it does not reasonably exist.

 "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if

arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. . . ." (*Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108-109 [33 L.Ed.2d 222, 227-228, 92 S.Ct. 2294], fns. omitted.)

On a basic level, an evaluation that a statute is vague concludes "men of common intelligence must necessarily guess at its meaning . . . ." (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126].) We seriously question whether a person evaluating this statute to divine the conduct proscribed would conclude that it was directed to or substantially encompassed speech as opposed to conduct. More likely, the reaction to appellant's interpretation of the reach of the statute would be that only a lawyer would have come up with that construction.

■ Section 148 deals with core criminal conduct. To characterize it as a statute broadly criminalizing speech directed to an officer or aimed at speech is simply wrong. Section 148 is not substantially overbroad. This is not to say that one could not trudge the path appellant lays out, but that his conclusion is unlikely and the reality of such application minuscule.
■ The remedy for an overbroad construction is invalidation of the statute or limitation to remove the threat. The court so noted in *Broadrick* v. *Oklahoma, supra,* 413 U.S. at page 613 [37 L.Ed.2d at pages 84-841], in evaluating standing in overbreadth cases:

"The consequence of our departure from traditional rules of standing in the First Amendment area is that any enforcement of a statute thus placed at issue is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression. Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute. [Citations.] Equally important, overbreadth claims, if entertained at all, have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct. . . ."

■ Appellant demonstrates no instance where a small possibility of a statute arguably being applied to protected conduct should result in invalidation or speculative restriction of the statute as a result of anticipation. For example, that a person who burns the flag of our country might be

arrested for disturbing the peace even though such conduct may be construed as protected First Amendment expression does not mean the remedy is to invalidate the statute against disturbing the peace. More reasonably, the remedy is to conclude the protected conduct is not proscribed by the statute. ▪ As discussed in *Broadrick*, "[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. It is our view that section 818 is not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." (*Broadrick* v. *Oklahoma, supra*, 413 U.S. at pp. 615-616 [37 L.Ed.2d at p. 842], fn. omitted.)

Otherwise stated: "It may be that such restrictions [under administrative rules] are impermissible and that § 818 may be susceptible of some other improper applications. But, as presently construed, we do not believe that § 818 must be disregarded *in toto* because some person's arguably protected conduct may or may not be caught or chilled by the statute. Section 818 is not substantially overbroad and is not, therefore, unconstitutional on its face." (*Broadrick* v. *Oklahoma, supra*, 413 U.S. at p. 618 [37 L.Ed.2d at pp. 843-844].)

▪ "Words inevitably contain germs of uncertainty . . . ." (*Broadrick* v. *Oklahoma, supra*, 413 U.S. at p. 608 [37 L.Ed.2d at p. 837].) Recognition of this fact assumes words and statutes will be given their ordinarily understood meaning. ▪ Appellant's argument rests itself upon a narrow ledge. We should not strike a law for overbreadth unless it lends itself to a significant amount of protected conduct. The fact that a tenuous interpretation may reach protected conduct does not compel the remedy of invalidation. "If a court were to strike down a narrowly focused law for the sake of dissipating its minimal chilling effect, the holding would effectively foreclose the field to legislation." (Note (1970) 83 Harv.L.Rev. 844, 859.)

We reiterate the words of Justice Brennan in *Houston* v. *Hill, supra*, 482 U.S. 451: "Only a statute that is substantially overbroad may be invalidated on its face. [Citations.] 'We have never held that a statute should be held invalid on its face merely because it is possible to conceive of a single impermissible application . . . .'" (*Id.* at p. 458 [96 L.Ed.2d at p. 410].) ▪ We do not view section 148 as reaching a substantial amount of protected conduct; therefore we do not find it overbroad.

In light of this conclusion, appellant's activity must be assessed on the basis of whether the statute clearly pertains to his conduct. We find it does and he does not argue otherwise. If the statute had been applied in the

manner appellant postulates, the person affected would be the person who would be heard to complain.

██ Having failed to demonstrate the statute is facially overbroad, appellant lacks standing to complain about possible improper applications of section 148. He falls squarely within the statute; his behavior involved pure conduct, no speech. Without a doubt, section 148 "would be constitutional as applied to this type of conduct." (*Broadrick* v. *Oklahoma, supra,* 413 U.S. at p. 610 [37 L.Ed.2d at p. 838].) Appellant will not be heard to complain of a conceived harm he has not suffered nor will we propose a remedy for a circumstance not before us.[5]

The judgment is affirmed.

Martin, Acting P. J., and Vartabedian, J., concurred.

---

[5] Having concluded section 148 is not overbroad, we need not address an argument that where speech is involved consideration should be given to requiring specific intent in order to avoid any constitutional violation. Section 148 has been interpreted as a general intent crime. (See *People* v. *Roberts* (1982) 131 Cal.App.3d Supp. 1, 9 [182 Cal.Rptr. 757], and *People* v. *Lopez* (1986) 188 Cal.App.3d 592, 602 [233 Cal.Rptr. 207].) Appellant does not maintain his conduct requires a specific intent interpretation in order to avoid invalidity.