[No. A049506. First Dist., Div. Two. Oct. 14, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JANIS OLSEN MANIS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1(a), this opinion is certified for publication with the exception of sections II.A. and II.C. through II.G.

## COUNSEL

Fern M. Laethem, State Public Defender, under appointment by the Court of Appeal, and Douglas G. Ward, Deputy State Public Defender, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and Rene A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PETERSON, J.**\*—Appellant was charged with a felony, willfully endangering the health of an elderly and dependent person under circumstances likely to produce great bodily harm or death, in violation of subdivision (a) of Penal Code[1] section 368. She was convicted after a jury trial and received probation, together with a jail sentence of 100 days.

Appellant raises numerous arguments on appeal: (1) A minor error of transcription by the court reporter requires that the jury's felony verdict be thrown out; (2) section 368 is unconstitutionally vague and overbroad, and violates substantive due process and equal protection rights; (3) appellant was denied effective assistance of counsel at trial; (4) the trial court erred in certain evidentiary rulings; (5) the conviction is not supported by substantial evidence; (6) the jury instructions were inaccurate; and (7) the trial court

---

\*Presiding Justice of the Court of Appeal, First District, Division Five, sitting under assignment by the Chairperson of the Judicial Council.

[1]All subsequent statutory references are to the Penal Code.

should not have required that appellant abstain from abuse of drugs and alcohol as a condition of probation. We reject these arguments and affirm the judgment of conviction.

## I. FACTS AND PROCEDURAL HISTORY

The facts of this case are gruesome; we summarize them briefly. Appellant resided with her helpless 79-year-old mother, who almost died from lack of food and water, and from infections left untreated. After the victim was rescued by paramedics, the emergency room doctors and other examining physicians observed that the victim was near death and had suffered one of the worst cases of dehydration and neglect they had ever seen—her body and clothes were caked with dried feces; she was suffering from burns caused by sitting in the same position, in her own urine, for at least a week; she had not been given any fluids for about a week and had not eaten for 10 days to 2 weeks; her flesh was literally rotting away, causing a horrible stench which filled appellant's house and permeated the entire emergency room. Appellant was charged with a felony violation of section 368, subdivision (a), endangering the health of an elder and dependent adult.

It is possible for a violation of section 368 to be either a felony or a misdemeanor. If the circumstances are such as would likely lead to the great bodily harm or death of the victim, it is a violation of subdivision (a) of section 368 and a felony. If a lesser degree of harm is shown, it is a violation of subdivision (b) of section 368 and a misdemeanor.

The signed jury verdict form shows that the jury found appellant guilty of the *felony* as charged in section 368, subdivision (a). Appellant also made a motion for a new trial, referring to her conviction of a felony. In that motion, she explicitly stated that "the jury found the defendant guilty of violation of Penal Code Section 368(a), a felony." The trial court sentenced appellant to felony probation, on condition that appellant serve one hundred days in the county jail. She timely appealed.

## II. DISCUSSION

### A. *Challenge to Felony Conviction**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### B. *Unconstitutionality Claims*

Appellant next claims section 368 is unconstitutional. Section 368 provides in relevant part as follows: "(a) Any person who, under

*See footnote, *ante*, page 110.

circumstances or conditions likely to produce great bodily injury or death, willfully causes or permits any elder or dependent adult, with knowledge that he or she is an elder or a dependent adult, to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured, or willfully causes or permits the elder or dependent adult to be placed in a situation such that his or her person or health is endangered, is punishable by imprisonment . . . ."

The Fifth District in *People* v. *Superior Court* (*Holvey*) (1988) 205 Cal.App.3d 51 [252 Cal.Rptr. 335], and the Second District in *People* v. *McKelvey* (1991) 230 Cal.App.3d 399 [281 Cal.Rptr. 359] have upheld the constitutionality of this statute; and we generally adopt their analysis. We also note that a unanimous Supreme Court in *People* v. *Smith* (1984) 35 Cal.3d 798, 809-810 [201 Cal.Rptr. 311, 678 P.2d 886] held, per Justice Mosk, that a child endangerment statute with almost identical wording, section 273a, subdivision (1), passed constitutional muster.

It is true that in *McKelvey, supra,* the Second District, though upholding the conviction in issue, also criticized the wording of section 368 in dicta as "uncertain." (230 Cal.App.3d at pp. 403-404.) We agree that the clause criticized in *McKelvey* ("Any person who . . . willfully . . . permits any . . . dependent adult . . . to suffer . . . .") could perhaps be improved; as written, appellant contends the statute would seem to criminalize the conduct of a passerby who does not take action to help an elder who is in pain. It was for precisely this reason that the Fifth District in *Holvey, supra,* closed the statutory gap, by a process of limiting interpretation, so as to construe the statute as reaching only "criminal negligence." (205 Cal.App.3d at p. 60.)

As so construed, the statute clearly reaches the conduct of appellant. By any standard, appellant's action in permitting her mother to literally rot away in appellant's house, from simple lack of food or water and untreated infections resulting from failure to move the victim out of a chair for a week at a time, would be considered "criminal[ly] negligen[t]." Since criminal negligence only arises from a gross violation of an already existing duty of care—a duty clearly assumed by appellant with respect to her helpless mother's care while the mother lived in appellant's house, the statute would not reach the conduct of a passerby who noticed such a situation but did nothing. Of course, such a passerby would have a moral, if not a legal, duty to report the problem to competent authority.

Appellant argues that the differences between children and adults support her claim that the statute is impermissibly vague in failing to give proper

notice. We are dubious as to whether appellant actually raised this theory in her briefs in the rather more effective form she gave it at oral argument, but out of (perhaps excessive) caution we will address this point. According to appellant's theory, the child endangerment statute in issue in *People* v. *Smith, supra,* 35 Cal.3d 798 passed constitutional muster as to a vagueness challenge only because children are not generally presumed to be competent to make decisions as to their health or welfare; being subject in any event to adult supervision, children do not have countervailing independent rights of decision in these areas which must be overborne by the adult who cares for them. Adults, by contrast, have these rights to make their own decisions.

Appellant, therefore, argues that where the victim of neglect or abuse is an elderly adult, as here, the statute must face an additional hurdle in specifying the circumstances in which criminal liability would attach to a person caring for such an elder who does not overrule the victim's desires.

This distinction appellant draws between victims who are children and those who are adults is not one which goes to any vagueness issue appellant could properly raise in this case. This is not a case in which, for instance, the victim sought to refuse a necessary operation. Contrary to appellant's rhetoric at oral argument, the medical evidence disclosed profoundly disturbing neglect and abuse over a period of at least 10 days to 2 weeks, attended by signs obvious to any reasonable layperson that the victim had been suffering from a number of complications which do not arise suddenly or without warning, and which produce symptoms impossible not to observe, such as the stench of rotting flesh; the victim's life was in grave danger from simple neglect of her basic human needs, in these circumstances obviously amounting to cruel abuse.

More fundamentally, the distinction appellant draws concerning the lesser degree of autonomy customarily granted to children (which was not at all the articulated basis of Justice Mosk's analysis in *People* v. *Smith, supra,* 35 Cal.3d 798) would not really aid appellant's vagueness challenge as to elderly adults in any event; it would go to the statute's definition of the class of victims whose hypothetical competence to make independent medical decisions has been supplanted by another adult's duty of care—i.e., to the issue of criminal negligence which we have already discussed and found dispositive here. We, therefore, reject this belated refinement to appellant's argument; in the words of Justice Mosk in *Smith*: "Moreover, we agree that these statutes are not so uncertain or indefinite as to render them invalid: they provide both notice to those whose activities are proscribed and guidance for the courts called on to apply them." (35 Cal.3d at p. 810.)

Further, as our Supreme Court noted in *Smith, supra,* "We are not obligated to 'consider every conceivable situation which might arise under

the language of the statute' [citation], so long as it may be given 'a reasonable and practical construction in accordance with the probable intent of the Legislature' [citation]. ▮ Defendant's conduct here clearly falls within the intended prohibition of [the statute]." (35 Cal.3d at p. 810; accord, *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1201 [246 Cal.Rptr. 629 [753 P.2d 585].)

We also reject appellant's unusual claim that section 368 violates the due process rights of elderly persons who might prefer to neglect their medical needs. First, appellant is not an elderly person who wants to suffer from lack of food or water, or wishes to have her flesh slowly rot away; we cannot understand how appellant would acquire standing to assert a victim's supposed "right" to be suffering such conditions. In any event, the argument is obviously frivolous in the factual context of this case, and we reject it.

Appellant next attempts to argue that prosecution under section 368 would burden the right of Christian Scientists and others to determine their own medical care. However, she does not establish personal standing as such a person; nor does this case actually involve medical care, but the failure to provide food, drink, or movement from a chair for over a week. We are not aware that any creed, or indeed any person, actually counsels or requires such conduct or regards this as an appropriate choice as to medical care. The statute is aimed, in any event, at neglect, not valid choices as to medical care.

▮ Moreover, the statute is not defective due to overbreadth (see *Houston* v. *Hill* (1987) 482 U.S. 451, 457-458 [96 L.Ed.2d 398, 409, 107 S.Ct. 2502]; *In re Andre P.* (1991) 226 Cal.App.3d 1164, 1174-1176 [277 Cal.Rptr. 363]), or because criminalizing the neglect of the elderly supposedly burdens the claimed associational rights of people of different ages; the Legislature may validly conclude that the special problems of the aged require particular statutory protection against criminal neglect, and may make statutory distinctions accordingly—even though those distinctions may have some effect upon the behavior of certain groups of people (see the decision of this panel in *People* v. *Edwards* (1991) 235 Cal.App.3d 1700, 1709 [1 Cal.Rptr.2d 631]).

▮ We also reject the claim that section 368 is invalid because the statute fails to define the word "care" in the phrase "Any person who, . . . having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured [is guilty] . . . ." We disagree. The word "care" as used in section 368 is not at all recondite or mysterious; no definition is necessary in order to give fair

notice, and we doubt any definition could be given which would use simpler words or ones more likely to be understood. We note that any definition of the word "care" would include having in one's house a helpless relative, such as the victim, who could not feed herself due to Alzheimer's disease. We also note our Supreme Court has granted review in *Williams* v. *Reiner* (1991) 7 Cal.App.4th 1582 [2 Cal.Rptr.2d 472] (review granted Apr. 3, 1992 (S024925)), in which a panel of the Second District found to be impermissibly vague another statute (§ 272) which criminalized the conduct of parents who, among other things, failed to exercise "reasonable care" over their children's activities in street gangs. Regardless of the outcome in *Williams*, the statute in question here uses "care," in apposition to "custody" and in the common sense of supervision or control, to define the class of persons who have elderly persons under their care—it does not use the word as a shorthand and arguably vague formulation of a standard of conduct as in *Williams*.

We conclude section 368 is constitutional.

C.-G.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

III. DISPOSITION

The judgment of conviction is affirmed.

Kline, P. J., and Smith, J., concurred.

A petition for a rehearing was denied November 13, 1992, and appellant's petition for review by the Supreme Court was denied February 11, 1993.

*See footnote, *ante*, page 110.