[No. A041693. First Dist., Div. Five. June 30, 1989.]

SEBAGO, INC., Plaintiff, Cross-defendant and Respondent, v.
CITY OF ALAMEDA, Defendant, Cross-complainant and Appellant.

COUNSEL

Carter J. Stroud for Defendant, Cross-complainant and Appellant.

Amitai Schwartz, Sue Ochs, James B. Chanin and Julie M. Houk for Plaintiff, Cross-defendant and Respondent.

Michael B. Dorais, Margaret C. Crosby, Alan L. Schlosser, Edward M. Chen, Matthew A. Coles, Alan C. Freeland, Neil L. Shapiro, Karl Olson, Martin Kassman and Cooper, White & Cooper as Amici Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

OPINION

KING, J.—

## I. INTRODUCTION

In this case we hold unconstitutional an ordinance restricting the sale of adult newspapers or periodicals from newsracks in the City of

Alameda. The ordinance does not meet the constitutional requirement that it be a content-neutral regulation aimed at preventing secondary effects of adult newsracks in the surrounding neighborhood or be a content-based regulation justified by a compelling state interest.

## II. THE FACTS

### A. The Complaining Citizen.

This case has its genesis in a 1986 letter from a city resident to the mayor and city council members, complaining that an "adults only" newspaper called The Spectator was being sold from newsracks on city streets. The author requested legislation to prohibit such sales. The city responded in 1987 with an ordinance amending its existing legislation regulating "adult entertainment activity."

### B. The Legislation.

The existing legislation, adopted in 1977, provides that specified adult entertainment activities are permitted only in certain types of zoning districts, and are not permitted within 500 feet of any area zoned for residential use or within 1,000 feet of the same type of adult entertainment activity. (Alameda Mun. Code, tit. XI, ch. 1, art. 4-E, §§ 11-14E3, 11-14E4, as enacted by Ord. No. 1849 New Series eff. Feb. 18, 1977.) At the time of the 1986 letter, adult entertainment activity was defined as "an adult book store [*sic*], adult motion picture theater, peep show, massage parlor, adult cabaret, pool or billiard establishment, or amusement hall." (Alameda Mun. Code, tit. XI, ch. 1, art. 4-E, § 11-14E2, subd. (a), as amended by Ord. No. 1901 New Series eff. Feb. 17, 1978.) ■■■ Similar ordinances have been upheld, against First Amendment challenges, as permissible time, place and manner restrictions that are "content-neutral" in that they are aimed not at the content of activity but at its secondary effects (specifically, urban blight) on the surrounding community. (*Renton* v. *Playtime Theatres, Inc.* (1986) 475 U.S. 41 [89 L.Ed.2d 29, 106 S.Ct. 925]; *Young* v. *American Mini Theatres, Inc.* (1976) 427 U.S. 50 [49 L.Ed.2d 310, 96 S.Ct. 2440].)[1]

The 1987 amendment adds "vending machine" to the definition of adult entertainment activity, and makes vending machines subject to the zoning district limitation and the 500-foot limitation but not the 1,000-foot limita-

---

[1] Alameda's 1977 legislation was upheld by the Alameda County Superior Court in 1983. (City of Alameda v. Golden Gate Books, Inc. (Super. Ct. Alameda County, 1983, No. 514794-8) judgment and statement of decision filed Sept. 8, 1983.) The trial court judgment was not reviewed on appeal.

tion. (Alameda Mun. Code, tit. XI, ch. 1, art. 4-E, §§ 11-14E3, 11-14E4, as amended by Ord. No. 2316 New Series eff. Feb. 20, 1987.) The amending ordinance defines vending machine as "any coin-operated device used to distribute adult book store [sic] materials." (Alameda Mun. Code, tit. XI, ch. 1, art. 4-E, § 11-14E2, subd. (j), as amended by Ord. No. 2316 New Series eff. Feb. 20, 1987.) The 1977 legislation defines adult bookstore materials as "books, magazines, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to" certain specified sexual activities or anatomical areas. (Alameda Mun. Code, tit. XI, ch. 1, art. 4-E, § 11-14E2, subds. (b) & (d).)

The amending ordinance includes the following findings: "The City Council finds that vending machines containing adult entertainment are located in places where adult entertainment is not otherwise permitted. The effect of vending machines in these locations is to weaken the effectiveness of [the 1977 legislation] and to permit access to minors who would not otherwise attempt to purchase it." (City of Alameda Ord. No. 2316 New Series, § 1.)

C. The Newspaper.

The Spectator, a tabloid which is the successor to the former Berkeley Barb, styles itself as "California's Weekly Sex News & Review." A typical issue contains a few articles on sex-related topics, several pages of erotic photographs and drawings, several pages of classifieds, and a large number of advertisements (most with photographs) for sex-oriented businesses such as telephone sex services.

The newspaper does not contain explicit "hard-core" photographic or pictorial depictions of sex acts, although in some instances sexual intercourse and female masturbation are mimicked or suggested. (Compare Pen. Code, § 313.1, subd. (c) [misdemeanor to distribute from vending machine "any harmful matter displaying to the public view photographs or pictorial representations of . . . sodomy, oral copulation, sexual intercourse, masturbation, bestiality, or a photograph of an exposed penis in an erect and turgid state."].) The city has consistently conceded that The Spectator contains no obscenity and is not harmful to minors under state law. (See Pen. Code, § 311, subd. (a) [defining obscenity for purposes of law restricting distribution of obscene matter]; Pen. Code, § 313, subd. (a) [defining "harmful matter" for purposes of law restricting distribution of matter harmful to minors].)

As of March 25, 1987, The Spectator was distributed from newsracks at approximately 175 locations in the San Francisco Bay Area. Five newsracks

were located in the City of Alameda. The newspaper was also sold at approximately 90 nonnewsrack locations in the San Francisco Bay Area, including a liquor store in Alameda.

### D. The Litigation.

Shortly after the effective date of the 1987 ordinance, Sebago, Inc., the publisher of The Spectator, challenged the constitutionality of the ordinance by a complaint for injunctive and declaratory relief.[2] The city filed a cross-complaint seeking a declaration that the ordinance was valid.

Following a period of discovery, Sebago and the city both moved for judgment on the pleadings. The court granted Sebago's motion and denied the city's motion, ruling that the newsrack ordinance "is unconstitutional on its face because [it] infringes upon the freedom of the press in violation of the First and Fourteenth Amendments to the United States Constitution and Article 1, Section 2, of the California Constitution." The court rendered a judgment declaring the ordinance unconstitutional and enjoining the city from enforcing it, and ordered the city to pay attorney fees in the sum of $45,000. (42 U.S.C. § 1988; Code Civ. Proc., § 1021.5.)

## III. DISCUSSION

### A. The Scope of Review.

Before discussing the substantive issues, we must address the procedural posture of this case and the scope of appellate review. ■ This case is unusual in that both parties filed complaints and answers and both moved for judgment on the pleadings as to both the complaint and the cross-complaint. In so moving, they each acted in the role of a defendant claiming a complaint failed to state a cause of action (*Sofias* v. *Bank of America* (1985) 172 Cal.App.3d 583, 586 [218 Cal.Rptr. 388]) and a plaintiff claiming an answer failed to raise an issue or state a defense (*Allstate Ins. Co.* v. *Kim W.* (1984) 160 Cal.App.3d 326, 331 [206 Cal.Rptr. 609]; *Adjustment Corp.* v. *Hollywood etc. Co.* (1939) 35 Cal.App.2d 566, 569 [96 P.2d 161]).

■ Motions for judgment on the pleadings are usually made by defendants. In such instances the motion is the equivalent of a general demurrer, and on appeal from the judgment the appellate court will assume the truth of all facts properly pleaded in the complaint. (*Stockton Newspapers, Inc.* v. *Redevelopment Agency* (1985) 171 Cal.App.3d 95, 99 [214 Cal.Rptr. 561].) Motions by a plaintiff for judgment on the pleadings, which are less

---

[2] Sebago was later succeeded in interest by Bold Type, Inc.

common, are the equivalent of a demurrer to an answer, and the standard of review is obverse: the appellate court will assume the truth of all facts properly pleaded in the answer and will disregard the controverted allegations of the complaint. (See *MacIsaac* v. *Pozzo* (1945) 26 Cal.2d 809, 812-813 [161 P.2d 449]; *Allstate Ins. Co.* v. *Kim W., supra,* 160 Cal.App.3d at p. 331.) ■ Because the successful motion by Sebago was addressed to both the complaint and the cross-complaint, both standards of review are invoked here: we must assume the truth of all facts properly pleaded in the city's cross-complaint and in its answer to the complaint and must disregard the controverted allegations of Sebago's complaint.

There is a further complication here. ■ A trial judge deciding a motion for judgment on the pleadings may also consider, in addition to facts pleaded, any matters subject to judicial notice. (*Barker* v. *Hull* (1987) 191 Cal.App.3d 221, 224 [236 Cal.Rptr. 285]; *Stencel Aero Engineering Corp.* v. *Superior Court* (1976) 56 Cal.App.3d 978, 987 & fn. 6 [128 Cal.Rptr. 691]; cf. *Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 475, fn. 3 [199 Cal.Rptr. 613] [motion for judgment on pleadings with judicial notice treated as motion for summary judgment], disapproved on another point in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373].) Sebago and the city both requested judicial notice of various matters. The court denied the city's request for judicial notice of Sebago's responses to interrogatories and requests for admissions and five issues of The Spectator, denied Sebago's request for judicial notice of the city's responses to interrogatories, and was silent as to all other requests for judicial notice.

■ On appeal, however, we are not bound by this ruling. An appellate court may take judicial notice of any matter of which a trial court may take judicial notice (Evid. Code, § 459, subd. (a)), and the trial court's refusal to take judicial notice does not preclude the appellate court from doing so. (*Rogers* v. *Cady* (1894) 104 Cal. 288, 290 [38 P. 81]; see *Ward Mfg. Co.* v. *Miley* (1955) 131 Cal.App.2d 603, 609 [281 P.2d 343].)

The matter of judicial notice is fundamentally important here, because the city's justification for the newsrack ordinance is stated in an interrogatory response. Sebago asked the city to state whether it contended The Spectator was a danger to health, safety or welfare, and if so to state the facts upon which this contention was based. The city responded, "Yes, in the police power sense," and stated, "We rely on the factual findings of prior cases. No independent studies were done. Adult entertainment down grades [*sic*] neighborhoods. Children may be shielded from it." As will be seen, that response is pivotal to the resolution of this appeal. We therefore take judicial notice of it. Judicial notice is permitted because the interrogatory and

response appear in the records of the trial court. (*Stencel Aero Engineering Corp.* v. *Superior Court, supra,* 56 Cal.App.3d at p. 987, fn. 6; see Evid. Code, § 452, subd. (d); *Barker* v. *Hull, supra,* 191 Cal.App.3d at p. 224.)[3]

To summarize, we must assume the truth of all facts properly pleaded in the city's cross-complaint and in its answer to the complaint and must disregard the controverted allegations of Sebago's complaint, but may also consider matters subject to judicial notice. Because the primary substantive allegations of Sebago's complaint are controverted, the practical effect of the standard of review is to bring before us only the text of the challenged legislation, which we review for facial validity, but the rule permitting judicial notice allows us also to consider the city's justification for the ordinance. So guided, we proceed to the merits of the appeal.

B. Facial Constitutionality.

1. The newsrack cases.

■ Our starting point is the proposition that "First Amendment protections are applicable to the public distribution of newspapers and periodicals through newsracks." (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 302 [138 Cal.Rptr. 53, 562 P.2d 1302]; accord, *Chicago Newspaper Publishers* v. *City of Wheaton* (N.D.Ill. 1988) 697 F.Supp. 1464, 1466.) ■ Thus, for example, the United States Supreme Court recently held unconstitutional an ordinance giving a mayor "unfettered" discretion to deny applications for permits to place newsracks on public property. (*Lakewood* v. *Plain Dealer* (1988) 486 U.S. 750 [100 L.Ed.2d 771, 792, 108 S.Ct. 2138].)

A three-justice dissent in *Lakewood* opined that the mere presence of administrative discretion did not render the ordinance invalid, since "our precedents suggest that an outright ban on newsracks on city sidewalks would be constitutional." (486 U.S. at pp. 773, 787 [100 L.Ed.2d at pp. 793, 802] [dis. opn. of White, J.]; contra, *Kash Enterprises, Inc.* v. *City of Los Angeles, supra,* 19 Cal.3d at p. 302 [municipalities lack constitutional authority to ban newsracks completely]; *Chicago Newspaper Publishers* v. *City of Wheaton, supra,* 697 F.Supp. at pp. 1469-1471 [complete ban on newsracks in residential zoning districts held unconstitutional].) ■ The City of Alameda argues that because Chief Justice Rehnquist and Justice

---

[3] The city has never disputed the authenticity of this interrogatory response. To the contrary, the city asserted in an opposition to a discovery motion that the interrogatory had been "answered as completely as possible." (See *Stencel Aero Engineering Corp.* v. *Superior Court, supra,* 56 Cal.App.3d at p. 987, fn. 6 [judicial notice proper upon counsel's authentication of responses to requests for admissions and interrogatories].)

Kennedy did not participate in *Lakewood* and will "no doubt . . . go with the dissenters," the dissenting opinion should be viewed as the true law of the land.

It is, of course, absurd to suggest that the *Lakewood* majority opinion is not truly the law because some future permutation of justices might decide otherwise (as well as insulting to Chief Justice Rehnquist and Justice Kennedy to suggest that their views on this issue are a foregone conclusion). ▮▮▮ But even if a complete ban on newsracks were constitutional, the point would be irrelevant here. There is no outright ban here, only a restriction imposed solely on newsracks containing adult bookstore materials. "[A] law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship." (*Lakewood* v. *Plain Dealer, supra,* 486 U.S. at p. 763 [100 L.Ed.2d at p. 787].) Even the dissent in *Lakewood* rejected the now-discredited proposition that where a state or municipality may ban an activity altogether, any restriction short of a complete ban is permissible. (486 U.S. at p. 786 [100 L.Ed.2d at pp. 801-802].)

The newsrack cases, however, simply establish the applicability of First Amendment principles to Alameda's restriction on the sale of adult bookstore materials through newsracks. Those cases do not resolve the issue whether this infringement on freedom of speech and freedom of the press is constitutionally acceptable. For that we must look to the law on restrictive zoning of adult bookstores and theaters.

### 2. The *Renton* decision and content-neutral regulation.

▮▮▮ Resolution of this appeal turns on *Renton* v. *Playtime Theatres, Inc., supra,* 475 U.S. 41, and the distinction between content-neutral and content-based regulation. "[R]egulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment." (*Id.* at pp. 46-47 [89 L.Ed.2d at p. 37].) Enforcement of such a content-based regulation requires a showing that it "is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." (*Perry Ed. Assn.* v. *Perry Local Educators' Assn.* (1983) 460 U.S. 37, 45 [74 L.Ed.2d 794, 804, 103 S.Ct. 948]; accord, *Sable Communications of California, Inc.* v. *F.C.C.* (1989) 492 U.S. __ [106 L.Ed.2d 93, 109 S.Ct. 2829].) In contrast, "so-called 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." (*Renton* v. *Playtime Theatres, Inc., supra,* 475 U.S. at p. 47 [89 L.Ed.2d at p. 37].)

In *Renton* the United States Supreme Court upheld a zoning ordinance which prohibited adult motion picture theaters from locating within 1,000 feet of any residential zone, dwelling, church, park or school. Adopting similar reasoning in an earlier plurality decision, *Young* v. *American Mini Theatres, Inc., supra,* 427 U.S. 50, the court held in *Renton* that the challenged ordinance was content-neutral because it was "aimed not at the *content* of the films shown at 'adult motion picture theatres,' but rather at the *secondary effects* of such theaters on the surrounding community." (*Renton, supra,* 475 U.S. at p. 47 [89 L.Ed.2d at p. 37], italics in original.) In this context secondary effects meant urban blight: "The ordinance by its terms is designed to prevent crime, protect the city's retail trade, maintain property values, and generally 'protec[t] and preserv[e] the quality of [the city's] neighborhoods, commercial districts, and the quality of urban life,' not to suppress the expression of unpopular views." (*Id.* at p. 48 [89 L.Ed.2d at p. 38].) The court concluded that the ordinance met the substantial governmental interest standard applicable to content-neutral regulation because "a city's 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect.'" (*Renton* v. *Playtime Theatres, Inc., supra,* 475 U.S. at p. 50 [89 L.Ed.2d at p. 39], quoting *Young* v. *American Mini Theatres, Inc., supra,* 427 U.S. at p. 71 [49 L.Ed.2d at p. 327]; see also *People* v. *Superior Court of Los Angeles County (Lucero)* (1989) 21 Cal.3d 14, 22, 24-25.)

The court in *Renton* also held that the city in that case, in enacting the ordinance, was entitled to rely on the experience of and studies produced by Seattle and other cities, and in particular on findings summarized in a Washington Supreme Court opinion, demonstrating the secondary effects of adult motion picture theaters. (*Renton, supra,* 475 U.S. at pp. 50-51 [89 L.Ed.2d at pp. 39-40].) "The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." (*Id.* at pp. 51-52 [89 L.Ed.2d at p. 40].)

3. The absence of content-neutrality.

The pivotal issue is whether Alameda's vending machine ordinance is content-neutral or content-based. Examination of the stated aims of and justification for the ordinance demonstrates it is content-based.

The ordinance by its terms identifies two aims: (1) to bolster the "effectiveness" of the 1977 legislation on adult entertainment activity—that

is, to prevent urban blight, and (2) to restrict the access of minors to adult newspapers. (City of Alameda Ord. No. 2316 New Series, § 1.)

Only the first aim could concern secondary effects within the meaning of *Renton*. The second aim, that of restricting the access of minors to adult newspapers, concerns direct listener reaction to speech and is thus content-based. ■ As the United States Supreme Court has explained, "Listeners' reactions to speech are not the type of 'secondary effects' we referred to in *Renton*. To take an example factually close to *Renton,* if the ordinance there was justified by the city's desire to prevent the psychological damage it felt was associated with viewing adult movies, then analysis of the measure as a content-based statute would have been appropriate. The hypothetical regulation targets the direct impact of a particular category of speech, not a secondary feature that happens to be associated with that type of speech." (*Boos* v. *Barry* (1988) 485 U.S. 312, 321 [99 L.Ed.2d 333, 344, 108 S.Ct. 1157].) ■ Here, the city's concern for exposure of minors to adult newspapers targets the direct impact of such newspapers, not a secondary feature that happens to be associated with their sales from newsracks.

We therefore focus on the first aim—the prevention of urban blight—to determine whether the ordinance is truly content-neutral. The city contends that newsracks from which adult newspapers such as The Spectator are sold create the same secondary effects as adult bookstores and theaters. The city's sole justification for this conclusion, asserted in its interrogatory response (see *ante,* p. 1380, was as follows: "We rely on the factual findings of prior cases. No independent studies were done. Adult entertainment down grades [*sic*] neighborhoods. Children may be shielded from it."

The problem with this justification is that newsracks are hardly the same as adult bookstores and theaters. There are no flashing lights or gaudy displays.[4] There is no steady stream of lingering customers. The product is not intended to be consumed at the site of its purchase. The city's assertion on appeal that "now that the bookstores are gone, what better place [for prostitutes and pimps] to meet the 'Johns?'" sounds more like an idea for a Gary Larson cartoon than a plausible constitutional argument.

In enacting the ordinance the city purported to rely on "the factual findings of prior cases." Unlike in *Renton,* however, there are no such factual findings in prior cases. There is no study or evidence "already generated by other cities." (*Renton* v. *Playtime Theatres, Inc., supra,* 475

---

[4]The size, appearance and location of all newsracks in Alameda are fully regulated by a general newsrack ordinance. (Alameda Mun. Code, tit. V, ch. 1, art. 7, § 5-171.1 et seq.)

U.S. at p. 51 [89 L.Ed.2d at p. 40].) No published decision has identified any secondary effects of adult newsracks. Evidently the "prior cases" upon which the city relied are *Renton* and *Young*, but those cases established only the secondary effects of adult bookstores and theaters, not newsracks.

It may be true as a general proposition that, in the city's words, "adult entertainment downgrades neighborhoods." But neither prior cases, independent studies nor common sense have yet demonstrated that adult *newsracks* downgrade neighborhoods. Unlike in *Renton,* Alameda's concern as to purported secondary effects of newsracks was truly "conclusory and speculative." (475 U.S. at p. 50 [89 L.Ed.2d at p. 40].)[5]

Because there is no basis for the city's assertion of secondary effects, it cannot be said that the ordinance is content-neutral. The validity of the ordinance must therefore be determined under the standard applicable to content-based regulation. The ordinance presumptively violates the First Amendment. (475 U.S. at p. 47 [89 L.Ed.2d at pp. 37-38].) Its enforcement requires a showing that it is necessary to serve a compelling state interest and is narrowly drawn to achieve that end. (*Sable Communications of California, Inc.* v. *F.C.C., supra,* 492 U.S. at p. __ [106 L.Ed.2d at p. 105]; *Perry Ed. Assn.* v. *Perry Local Educators' Assn., supra,* 460 U.S. at p. 45 [74 L.Ed.2d at pp. 804-805].)

### 4. The absence of constitutional justification.

The city asserts it has a legitimate interest in restricting the unsupervised access of minors to adult bookstore materials. That may be so. (See *Sable Communications of California, Inc.* v. *F.C.C., supra,* 492 U.S. at p. __ [106 L.Ed.2d at p. 105] [government has legitimate interest in protecting children from exposure to indecent dial-a-porn telephone messages].) But given the newsrack ordinance's broad scope, it neither implicates a *compelling* state interest nor is drawn in a sufficiently narrow fashion. The ordinance is not limited to obscenity, or even to matters deemed "harmful" to minors by Penal Code section 313, subdivision (a).[6] Its coverage is much broader.

---

[5] The city cannot complain that the judgment on the pleadings precluded it from presenting evidence of studies on the issue of secondary effects. Its interrogatory response established that in enacting the ordinance it relied solely on "factual findings of prior cases," not on independent studies. (Compare *Renton* v. *Playtime Theatres, Inc., supra,* 475 U.S. at p. 50 [89 L.Ed.2d at p. 40] ["The record in this case reveals that Renton relied heavily on the experience of, and studies produced by, the city of Seattle."].)

[6] Penal Code section 313, subdivision (a), defines "harmful matter" as "matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors."

For example, the "specified anatomical areas" element applies to mere nudity, including the depiction of "[l]ess than completely and opaquely covered: (a) human genitals, public [*sic*] region, (b) buttock, and (c) female breast below a point immediately above the top of the areola . . . ." (Alameda Mun. Code, tit. XI, ch. 1, art. 4-E, § 11-14E2, subd. (d); see *Schad* v. *Mount Ephraim* (1981) 452 U.S. 61, 66 [68 L.Ed.2d 671, 678-679, 101 S.Ct. 2176] [nudity alone does not place material outside protection of First Amendment].) The "specified sexual activities" element applies to such potentially innocuous conduct as "fondling" of "buttock." (Alameda Mun. Code, tit. XI, ch. 1, art. 4-E, § 11-14E2, subd. (d).) The ordinance applies to material not only "depicting" but also "describing or relating to" specified sexual activities or anatomical areas (Alameda Mun. Code, tit. XI, ch. 1, art. 4-E, § 11-14E2, subd. (b)), and thus would even apply to public health publications on prevention of sexually transmitted diseases. To borrow a bit of doggerel from Tom Lehrer, the newsrack ordinance does *not* apply to "smut and nothing but." (Lehrer, *Smut,* in That Was the Year That Was (phonograph record 1965.)

The city concedes that The Spectator in particular is neither obscene nor harmful to minors under state law. (See *Sable Communications of California, Inc.* v. *F.C.C., supra,* 492 U.S. at p. __ [106 L.Ed.2d at p. 105] ["Sexual expression which is indecent but not obscene is protected by the First Amendment . . . ."].) If such a publication is not harmful to minors, there cannot possibly be a compelling state interest in protecting them from it, sufficient to justify a content-based infringement of the First Amendment. Indisputably Alameda has a compelling interest in protecting minors from unsupervised access to *harmful* adult bookstore materials, but this ordinance is not narrowly drawn to achieve that end. It is so broad in scope as to apply to all manner of benign publications.

Additionally, the relationship between the ordinance and the asserted governmental interest is so tenuous as to fall short of constitutional sufficiency. (See *City of Watseka* v. *Illinois Public Action Council* (7th Cir. 1986) 796 F.2d 1547, 1554; affd. (1987) 479 U.S. 1048 [93 L.Ed.2d 972, 107 S.Ct. 919].) The ordinance merely moves the newsracks away from residential areas. Any determined teenager can seek out the relocated newsracks. As Sebago points out, it is just as likely, if not more likely, that a minor will purchase an adult newspaper from a newsrack far away from the watchful eyes of parents and neighbors.

The trial court therefore ruled correctly when it determined that Alameda's adult newsrack ordinance violates the First Amendment to the United

States Constitution as well as article I, section 2, of the California Constitution.[7]

This conclusion does not leave government helpless to protect minors from unsupervised access to harmful pornography through newsracks; it just requires careful drafting by legislators. For example, Penal Code section 313.1, subdivision (c), makes it a misdemeanor to distribute from a vending machine "in a public place, other than a public place from which minors are excluded, any harmful material displaying to the public view photographs or pictorial representations of . . . sodomy, oral copulation, sexual intercourse, masturbation, bestiality, or a photograph of an exposed penis in an erect and turgid state." Such specific and narrow drafting avoids the constitutional infirmity presented here.

C. Validity of the Ordinance as Applied.

The city's opening brief also argues that the ordinance is valid as applied to Sebago. At first glance this argument is puzzling, since it cannot possibly be pertinent to our review of a determination of facial validity in a judgment on the pleadings. The puzzle is quickly solved, however, by reference to the clerk's transcript. The opening brief is mostly copied from two trial memoranda. On appeal the city's counsel omitted to edit the passage on validity as applied, which was written before the motions for judgment on the pleadings.

This point highlights a problem commonly encountered in appeals, though this case is not an extreme example. All too often we must contend with briefs that are copied verbatim from trial memoranda. This approach can be a serious mistake. The outcome of an appeal is often determined by the applicable standard of appellate review, which is not taken into account in trial arguments. The focus of appellate review can be quite different than at trial, and appellate counsel should adjust to the shift in focus. There is little harm done here, for we can simply ignore the claim as to validity of the ordinance as applied to Sebago. Counsel's lack of attention to detail, however, does little to enhance his otherwise well-written opening brief.

We take this opportunity to advise appellate attorneys who use material from trial memoranda to take care in adapting the material to the altered

[7] Because we conclude the ordinance is unconstitutional, we need not address the city's argument that the ordinance is not preempted by the provisions of the Penal Code restricting the distribution of matter that is obscene or harmful to minors. (Pen. Code, § 311 et seq.; see *American Booksellers Assn., Inc.* v. *Superior Court* (1982) 129 Cal.App.3d 197, 202 [181 Cal.Rptr. 33]; *Gluck* v. *County of Los Angeles* (1979) 93 Cal.App.3d 121 [155 Cal.Rptr. 435].)

focus of appellate review. Points that are irrelevant to the appeal should be omitted. Subsequent pertinent legal authorities should be addressed.[8] Arguments should be tailored according to the applicable standard of appellate review.

### D. Attorney Fees.

 Sebago requests an award of its appellate attorney fees. (42 U.S.C. § 1988; Code Civ. Proc., § 1021.5; *Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 639 [186 Cal.Rptr. 754, 652 P.2d 985].) The city does not oppose the request. The superior court has already determined Sebago's entitlement to its attorney fees before appeal; in fact, the city stipulated to both entitlement and the amount of the award. If Sebago was entitled to its attorney fees for successfully prosecuting this action below, it is necessarily entitled to its attorney fees for defending against the city's appeal. The question of entitlement has already been established. (Cf. *Bouvia* v. *County of Los Angeles* (1987) 195 Cal.App.3d 1075, 1081 [241 Cal.Rptr. 239] [entitlement and amount of award are best decided by trial court in first instance].) The amount of the award shall be determined by the superior court in conjunction with its award of appellate costs. (*Phipps* v. *Saddleback Valley Unified School District* (1988) 204 Cal.App.3d 1110, 1123, fn. 10 [251 Cal.Rptr. 720].)

### IV. DISPOSITION

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 23, 1989.

---

[8] To his credit, the city's counsel added to the opening brief a discussion of *Lakewood* v. *Plain Dealer, supra,* 486 U.S. 750 [100 L.Ed.2d 771], which was decided after this appeal commenced.