[No. B085586. Second Dist., Div. Six. Dec. 5, 1995.]

WAYNE C. BERRY, Plaintiff and Appellant, v.
CITY OF SANTA BARBARA et al., Defendants and Respondents.

COUNSEL

Fleishman, Fisher & Moest and Stanley Fleishman for Plaintiff and Appellant.

Daniel J. Wallace, City Attorney, and Janet K. McGinnis, Assistant City Attorney, for Defendants and Respondents.

OPINION

YEGAN, J.—We are called upon to delicately balance precious First Amendment rights against the government's interest in protecting minors from viewing harmful matter. Wayne C. Berry, who distributes an "adult" publication from sidewalk newsracks, challenged enforcement of a city ordinance of the City of Santa Barbara (City) on the theory that it violated the United States Constitution. The trial court disagreed. We have strictly scrutinized the ordinance, section 5.66.110 of the Santa Barbara Municipal Code, and conclude that, on its face, the ordinance passes constitutional muster. However, the trial court did not expressly rule on whether the front page of the subject publication is harmful to minors. We cannot affirm the judgment on the pleadings insofar as it requires "L.A. X . . . Press" to be blinded. We remand for an express determination on the issue of whether the front page of the publication is harmful to minors.

### The Ordinance and Statute.

Chapter 5.66 of the Santa Barbara Municipal Code regulates the registration, placement and appearance of newsracks within the City. Section 5.66.110, the only portion of chapter 5.66 which is at issue here, provides: "No material which is harmful to minors, as defined in Section 313 of the Penal Code of the State, shall be displayed in a public place, other than a public place from which minors are excluded, unless blinder racks are placed in front of the material so that the lower two-thirds (2/3) of the material is not exposed to view."

Penal Code section 313, subdivision (a), defines "harmful matter" as "matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors."

*The Publication.*

Appellant distributes an "adult" or "erotic" publication, the "L.A. X . . . Press," from locked, sidewalk newsracks outside the post office, bus station, grocery stores, restaurants and other locations throughout the City. The publication consists primarily of advertisements for massage parlors, telephone sex lines, other forms of "adult" entertainment, and "personal" advertisements. The advertisements often are accompanied by sexually explicit photographs leaving little to the imagination. The publication also prints news articles, music and movie reviews, and editorials. The publication's front page appears to typically contain a photograph of a scantily clad woman in a provocative pose suggesting sexual conduct.[1]

*The Litigation.*

The City enacted the ordinance on November 23, 1993. Appellant filed his complaint the next day. He argued in the trial court, as he does here, that the City ordinance fails strict constitutional scrutiny because it unnecessarily prevents adults from viewing the front page of publications distributed through newsracks, even when the front page is not itself harmful material. He further argues that the ordinance violates the equal protection clause of the Fourteenth Amendment because it applies only to the display of "harmful matter" in newsracks but not to the display of similar materials in bookstores and other venues. Finally, appellant contends that the ordinance is facially overbroad because it does not contain a scienter requirement and could, therefore, apply to those who display material without knowledge of its harmful character.

The trial court denied appellant's request for a preliminary injunction and shortly thereafter granted the City's motion for judgment on the pleadings. In granting the motion, the trial court made certain findings: (1) The ordinance is permitted by Penal Code section 313.1, subdivision (d);[2] (2) the publication constitutes harmful matter within the meaning of the ordinance; (3) "when harmful matter is displayed in a public place that does not exclude

---

[1]Two exemplars were introduced into evidence. The front page of volume 5, number 7, issue 272, November 18, 1993, depicts two extremely buxom women, "Wendy Whoppers" and "Lisa Lips." They are essentially naked from the waist up. Their nipples are covered with small coverings and small strips of cloth.

The front page of volume 5, number 7, issue 278, December 30, 1993, depicts a woman on her knees wearing only a shirt and shoes. Her naked buttocks would expose her genitalia but for an opaque dot strategically placed on the photograph.

[2]Penal Code section 313.1, subdivision (d) provides: "Nothing in this section invalidates or prohibits the adoption of an ordinance by a city, county, or city and county that restricts the display of material that is harmful to minors, as defined in this chapter, in a public place, other than a public place from which minors are excluded, by requiring the placement of

minors, the city may require that it be blinded whether or not the cover of the harmful matter contains harmful matter itself"; (4) the ordinance "has a proper purpose and effect" because it allows members of the public to identify harmful matter; and (5) the ordinance does not violate the First and Fourteenth Amendments to the United States Constitution because the publications are harmful to minors and plaintiff is, therefore, "subject to display and sale restrictions under city ordinance and state law as are all persons displaying and selling harmful matter in public places."[3]

### *Standard of Appellate Review and Rules of Construction.*

In reviewing the trial court's decision to sustain the demurrer and grant judgment on the pleadings, we assume the truth of all material facts properly pleaded in the amended complaint, but not contentions or conclusions of fact or law. We also consider matters which may be judicially noticed. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 607, 487 P.2d 1241].)
■ In this First Amendment case, we review de novo, i.e., we independently decide, whether the ordinance violates the First and Fourteenth Amendments to the United States Constitution. (*Gonzales* v. *Superior Court* (1986) 180 Cal.App.3d 1116, 1122 [226 Cal.Rptr. 164] [city sign ordinance]; *Sussli* v. *City of San Mateo* (1981) 120 Cal.App.3d 1, 9 [173 Cal.Rptr. 781] [city sign ordinance]; see also *Bose Corp.* v. *Consumers Union of U.S., Inc.* (1984) 466 U.S. 485, 499-511 [80 L.Ed.2d 502, 515-523, 104 S.Ct. 1949]; *McCoy* v. *Hearst Corp.* (1986) 42 Cal.3d 835, 841-846 [231 Cal.Rptr. 518, 727 P.2d 711]; *Zeitlin* v. *Arnebergh* (1963) 59 Cal.2d 901, 909 [31 Cal.Rptr. 800, 383 P.2d 152]; *L.A. Teachers Union* v. *L.A. City Bd. of Ed.* (1969) 71 Cal.2d 551, 557 [78 Cal.Rptr. 723, 455 P.2d 827].)

Even though appellant has not been prosecuted for failing to install blinder racks, we "proceed with caution and restraint, as invalidation may result in unnecessary interference with a [city] regulatory program." (*Erznoznik* v. *City of Jacksonville* (1975) 422 U.S. 205, 216 [45 L.Ed.2d 125, 135, 95 S.Ct. 2268].) ■ If possible, the ordinance must be interpreted to avoid constitutional difficulties. (*Frisby* v. *Schultz* (1988) 487 U.S. 474, 483 [101 L.Ed.2d 420, 430-431, 108 S.Ct. 2495].) The ordinance will not be invalidated if it is readily susceptible to a narrowing construction that would

devices commonly known as blinder racks in front of the material, so that the lower two-thirds of the material is not exposed to view."

[3] As we shall explain, the city may not blind newsracks that distribute "L.A. X . . . Press" unless the front page thereof is "harmful to minors." Based upon the exemplars, a trier of fact could determine that the advertisements inside the publication are harmful to minors. Even though we hold that section 5.66.110 of the Santa Barbara Municipal Code passes constitutional muster, the trial court may not require the subject publication to be blinded unless it determines that the front page is "harmful to minors." We express no opinion on this issue at this time.

make it constitutional. (*Virginia* v. *American Booksellers Assn.* (1988) 484 U.S. 383, 397 [98 L.Ed.2d 782, 796, 108 S.Ct. 636]; *Erznoznik* v. *City of Jacksonville, supra,* 422 U.S. at p. 216 [45 L.Ed.2d at p. 135].)

### Standard of Obscenity and the Protection of Minors.

"Sexual expression which is indecent but not obscene is protected by the First Amendment . . . . The Government may . . . regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest. ▮ We have recognized that there is a compelling interest in protecting the physical and psychological well-being of minors. This interest extends to shielding minors from the influence of literature that is not obscene by adult standards. [Citations.] The Government may serve this legitimate interest, but to withstand constitutional scrutiny, 'it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms. [Citations.] It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends." (*Sable Communications of Cal., Inc.* v. *FCC* (1989) 492 U.S. 115, 126 [106 L.Ed.2d 93, 105, 109 S.Ct. 2829]; *Ginsberg* v. *New York* (1968) 390 U.S. 629, 639 [20 L.Ed.2d 195, 203-204, 88 S.Ct. 1274].) This pronouncement from the United States Supreme Court certainly gives the California Legislature and local government the constitutional power to enact laws designed to keep harmful matter away from minors.

Judged by adult standards, the publications at issue here are not obscene. The City so conceded at oral argument. Accordingly, they and their distribution through newsracks are entitled to First Amendment protection. (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 302 [138 Cal.Rptr. 53, 562 P.2d 1302]; *Sebago, Inc.* v. *City of Alameda* (1989) 211 Cal.App.3d 1372, 1381 [259 Cal.Rptr. 918].)

### The Ordinance Does Not Violate the Free Speech and Press Provisions of the First Amendment.

▮ Because laws that attempt to regulate expression "pose a particular danger of abuse by the State," (*Arkansas Writers' Project Inc.* v. *Ragland* (1987) 481 U.S. 221, 228 [95 L.Ed.2d 209, 218-219, 107 S.Ct. 1722]), they are carefully scrutinized. (*Turner Broadcasting System* v. *FCC* (1994) 512 U.S. __, __-__ [129 L.Ed.2d 497, 516-517, 114 S.Ct. 2445].) The level of scrutiny applied depends upon whether the regulation is content based or content neutral. "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views

expressed are content-based." (*Turner Broadcasting System* v. *FCC, supra,* 512 U.S. at p. __ [129 L.Ed.2d at p. 518].) In determining whether a regulation is content-based, the "principle inquiry . . . , is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. [Citation.] The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. [Citation.]" (*Ward* v. *Rock Against Racism* (1989) 491 U.S. 781, 791 [105 L.Ed.2d 661, 675, 109 S.Ct. 2746].)

Content-based regulations are presumed to be invalid. (*R.A.V.* v. *St. Paul* (1992) 505 U.S. 377, 382 [120 L.Ed.2d 305, 317, 112 S.Ct. 2538]; *City of Fresno* v. *Press Communications, Inc.* (1994) 31 Cal.App.4th 32, 40 [36 Cal.Rptr.2d 456].) To uphold such a regulation, the government must demonstrate that the regulation is necessary to serve a compelling state interest and that it has been narrowly tailored to achieve that end. (*Frisby* v. *Schultz, supra,* 487 U.S. 474, 481 [101 L.Ed.2d 420, 429]; *Sebago, Inc.* v. *City of Alameda, supra,* 211 Cal.App.3d 1372, 1382.) By contrast, a content-neutral regulation will be upheld if it is " 'narrowly tailored to serve a significant government interest, and [it leaves] open ample alternative channels of communication.' " (*Frisby* v. *Schultz, supra,* 487 U.S. at p. 481 [101 L.Ed.2d at p. 429].)

■ The ordinance at issue here distinguishes between publications based solely upon whether they contain material which is deemed "harmful matter" for minors. It represents a legislative determination by the City that such material is inappropriate for even limited viewing by minors. (*Ward* v. *Rock Against Racism, supra,* 491 U.S. at p. 791 [105 L.Ed.2d at p. 675]; *City of Fresno* v. *Press Communications, Inc., supra,* 31 Cal.App.4th at p. 40.) No content-neutral justification for the ordinance has been offered. The City contends it is entitled to protect children from "harmful matter," not that its ordinance seeks to mitigate any "secondary effects" associated with sidewalk newsracks, such as traffic congestion, loitering or crime. (See, e.g., *Renton* v. *Playtime Theaters, Inc.* (1986) 475 U.S. 41, 48 [89 L.Ed.2d 29, 38, 106 S.Ct. 925] [zoning restrictions for adult movie theaters which seek to control crime and maintain property values are "unrelated to the suppression of free expression," and therefore content neutral]; *Sebago, Inc.* v. *City of Alameda, supra,* 211 Cal.App.3d at pp. 1383-1385 [ordinance restricting newsrack sales of "adult" newspapers to areas zoned for "adult" businesses content based because not targeted at "secondary effects" of newsracks].) We conclude that the ordinance is a content-based regulation of speech and is, therefore, subject to strict constitutional scrutiny.

Application of strict scrutiny, however, does not sound the death knell for this ordinance. The Supreme Court has consistently held that states and municipalities have a compelling interest in protecting the welfare of minors and, specifically, in preventing minors from gaining access to materials deemed obscene as to them. (*Sable Communications of Cal., Inc.* v. *FCC, supra*, 492 U.S. 115, 126 [106 L.Ed.2d 93, 105, 109 S.Ct. 2829]; *FCC* v. *Pacifica Foundation* (1978) 438 U.S. 726, 749-750 [57 L.Ed.2d 1073, 1093-1094, 98 S.Ct. 3026]; *Ginsberg* v. *New York, supra*, 390 U.S. 629, 639-641 [20 L.Ed.2d 195, 203-205, 88 S.Ct. 1274].) ■ The ordinance at issue here seeks to protect minors from exposure to harmful matter. It serves a compelling state interest.

The remaining question is whether this ordinance is narrowly tailored to achieve the City's interest in protecting minors without unnecessarily restricting the First Amendment freedoms of adults. An ordinance is narrowly tailored only if the City has chosen the "least restrictive means to further the articulated interest." (*Sable Communications of Cal., Inc.* v. *FCC, supra*, 492 U.S. at p. 126 [106 L.Ed.2d at p. 105].) In other words, the ordinance must "target[] and eliminate no more than the exact source of the 'evil' it seeks to remedy." (*Frisby* v. *Schultz, supra*, 487 U.S. 474, 485 [101 L.Ed.2d 420, 432, 108 S.Ct. 2495].)

Appellant argues that the ordinance is not narrowly tailored because it impedes the access of adults to the publication he distributes. According to him, sales decline when blinder racks are used because the blinders cover the front page and the entire purpose of the front page is to encourage customers to purchase the newspaper. He argues that a warning sticker placed on the newsrack, stating that minors may not purchase the newspaper, would adequately protect children from the harmful aspects of the publication while allowing potential adult customers to view the entire front page. This, of course, assumes that the warning will work, i.e., that the minor will heed the warning. We cannot indulge this assumption. If a minor wants to peruse the entire front page he or she will, in all probability, do so. Appellant has not demonstrated as a matter of law that a warning sticker would further the articulated interest of keeping harmful material away from minors.

Here the ordinance targets and eliminates only the display of harmful matter on the lower two-thirds of the front page of the publication. The remainder of the pages which contain harmful matter are blinded by the front page. The front page harmful matter is the exact source of the evil sought to be remedied by the ordinance. This is narrow tailoring. Thus, the trial court's third finding (*ante*, pp. 1081-1082) that blinders are required " '. . . whether or not the cover of the harmful matter contains harmful matter itself' " is

logically and legally erroneous. If, but only if, the front page of a publication contains harmful matter, the City may require that it be blinded.

Two other courts have cited blinder racks as an example of a permissible display regulation precisely because the racks impose an insignificant burden on adult access to such publications. These courts have reasoned that, because blinder racks allow adults to determine the content of and purchase materials without restriction, ". . . the burden on adults' access to material protected as to them is constitutionally insignificant and therefore permissible." *American Booksellers* v. *Webb* (11th Cir. 1990) 919 F.2d 1493, 1509, cert. den. 500 U.S. 942 [114 L.Ed.2d 479, 111 S.Ct. 2237]; see also *M.S. News Co.* v. *Casado* (10th Cir. 1983) 721 F.2d. 1281, 1287-1288 [blinder rack ordinance constitutional].)

At oral argument, appellant claimed that these decisions should not control because they did not engage in a strict scrutiny analysis. This distinction, however, does not compel the conclusion that a blinder rack ordinance can never pass strict constitutional scrutiny.

We agree with the rationale of the 10th and 11th Circuits and conclude that the instant blinder rack ordinance imposes a constitutionally insignificant and therefore permissible burden on adult access to the publication. The fact that sales of the publication may decline when blinder racks are in place does not mean that the ordinance unreasonably restricts adult access to these materials. The First Amendment is not a sword to enhance marketing tactics. Nor is it a shield for peddlers of erotica to expose their wares to minors. The ordinance places no restriction on adult access to the materials. It only prevents minors and other nonpurchasers from viewing a portion of the front page of the publication. Because one-third of the front page remains exposed to view, potential customers can determine the basic content of the publication and, thus, whether they wish to purchase it.

*The Ordinance Does Not Violate the Equal Protection Clause of the Fourteenth Amendment.*

■ Like the free speech and press provisions of the First Amendment, the equal protection clause of the Fourteenth Amendment generally prohibits the government from drawing content-based distinctions between speech activities. "When [a] government regulation discriminates among speech-related activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." (*Carey* v. *Brown* (1980) 447 U.S. 455, 461-462 [65 L.Ed.2d 263, 269-270, 100 S.Ct. 2286].)

Appellant contends the ordinance violates the equal protection clause because it applies only to the display of "harmful matter" in a sidewalk newsrack, and not to the display of such material in other locations such as bookstores. He is incorrect. Although the ordinance appears in a chapter of the Santa Barbara Municipal Code devoted to newsracks, it is not limited to the display of harmful material in newsracks. Instead, on its face, the ordinance applies whenever material which is harmful to minors is "displayed in a public place, other than a public place from which minors are excluded. . . ." The ordinance does not discriminate among distribution locations. Accordingly, it does not violate the equal protection clause.

*The Ordinance Is Readily Susceptible to a Construction Which Includes the Necessary Scienter Requirement.*

■ Appellant's final contention is that the ordinance violates the First Amendment because it does not contain a scienter requirement. According to appellant, a literal interpretation of the ordinance would allow for the prosecution of a person who displayed harmful matter without a blinder rack, even if the person had no knowledge of the content or character of the displayed material.

The City argues that the possibility of such a prosecution is irrelevant because appellant is not facing criminal charges and obviously knows that the newspaper he distributes contains harmful matter. We reject the City's argument. Appellant is "permitted to challenge [the ordinance] on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution . . . . If the overbreadth is 'substantial,' [fn. omitted] the law may not be enforced against anyone, including the party before the court, until it is narrowed to reach only unprotected activity, whether by legislative action or by judicial construction or partial invalidation. [Citation.]" (*Brockett* v. *Spokane Arcades, Inc.* (1985) 472 U.S. 491, 503-504 [86 L.Ed.2d 394, 405-406, 105 S.Ct. 2794]; see also *People* v. *Library One, Inc.* (1991) 229 Cal.App.3d 973, 980, 981 [280 Cal.Rptr. 400]; *In re Andre P.* (1991) 226 Cal.App.3d 1164, 1170-1172 [277 Cal.Rptr. 363].)

■ Statutes which criminalize the distribution of obscene or indecent materials must contain a scienter requirement because the imposition of strict criminal liability would have an unacceptable chilling effect on the public's access to constitutionally protected materials. (*Smith* v. *California* (1959) 361 U.S. 147, 153-155 [4 L.Ed.2d 205, 211-212, 80 S.Ct. 215].) However, such statutes are "akin to the common law offenses against the 'state, person, property, or public morals,' [citation], that presume a scienter

requirement in the absence of express contrary intent." (*United States* v. *X-Citement Video* (1994) 513 U.S. __-__ [130 L.Ed.2d 372, 381, 115 S.Ct. 464] quoting *Morissette* v. *United States* (1952) 342 U.S. 246, 255 [96 L.Ed. 288, 296, 72 S.Ct. 240].) The ordinance may, therefore, be presumed to require that a person have knowledge of both the "harmful" character of displayed material and the age of the persons to whom it is displayed.

We are obliged to adopt a narrowing construction of the ordinance to avoid constitutional difficulties, if the ordinance is readily susceptible to such a construction. (*Frisby* v. *Schultz, supra,* 487 U.S. 474, 483 [101 L.Ed.2d 420, 430-431, 108 S.Ct. 2495.]) This rule, together with the presumption in favor of a scienter requirement, lead us to conclude that the ordinance does not impose strict criminal liability.

The ordinance defines "material which is harmful to minors" by incorporating the definition of "harmful matter" contained in Penal Code section 313. Neither the ordinance nor section 313 specifically mentions the mental state necessary for a violation. However, the ordinance is modeled after and specifically authorized by Penal Code section 313.1, subdivision (d). That statute contains two separate knowledge requirements: the person displaying harmful matter must have knowledge of the character of the matter and either have knowledge of, or fail to exercise reasonable care in ascertaining the age of the persons to whom it is displayed. (Pen. Code, § 313.1, subds. (a), (c); *Gluck* v. *County of Los Angeles* (1979) 93 Cal.App.3d 121 [155 Cal.Rptr. 435].) We read the ordinance to contain the same requirements. So limited, the ordinance does not violate the First Amendment. (*United States* v. *X-Citement Video, supra,* 513 U.S. at p. __ [130 L.Ed.2d at p. 381].)

*Application of the Ordinance to "L.A. X . . . Press"*

 To the extent the trial court's ruling was predicated solely on the finding that harmful matter inside a publication provides a basis for blinding the cover, it was erroneous. The crucial determination of whether the front page of "L.A. X . . . Press" is harmful to minors is to be addressed, in the first instance, by the trial court. We exercise judicial restraint and remand for a determination of whether the front page is harmful to minors. We express no opinion on the issue at this time and no inference is to be drawn from any language in this opinion. "Wise adjudication has its own time for ripening." (*Maryland* v. *Baltimore Radio Show* (1950) 338 U.S. 912, 918 [94 L.Ed. 562, 566, 70 S.Ct. 252].)

If the trial court determines that the front page is harmful to minors, then it shall grant judgment on the pleadings requiring the publication to be

blinded. If it determines to the contrary, it shall deny the motion for judgment on the pleadings. Thereafter, the harmfulness issue may be revisited on summary judgment or plenary adjudiation.

### Conclusion

For the reasons stated above, we conclude that section 5.66.110 of the Santa Barbara Municipal Code does not violate the free speech, free press or equal protection clauses of the United States Constitution.

We affirm the trial court's ruling that section 5.66.110 of the Santa Barbara Municipal Code is facially constitutional. We reverse the order requiring "L.A. X . . . Press" to be blinded, and remand for an express ruling on whether its front page is harmful to minors. Each party shall bear its own costs.

Stone (S. J.), P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied January 3, 1996, and the opinion was modified to read as printed above.