ARONSON, J., Concurring.
I agree with the majority that grisly and gruesome depictions are not categorically unprotected speech; Defendant's prohibition against grisly and gruesome displays is a content-based restriction subject to strict scrutiny; and Defendant did not carry its burden of demonstrating that restriction serves a compelling government interest and is narrowly tailored. But I write separately to dispel the notion that protecting young children from psychologically harmful images cannot ever be a compelling state interest.[4] Under certain circumstances, it very well might be.
*408 Both the United States Supreme Court and various California courts have recognized the government has a compelling interest in protecting minors from a variety of harms. (See Sable, supra , 492 U.S. at p. 126, 109 S.Ct. 2829 [government may shield minors "from the influence of literature that is not obscene by adult standards" because "there is a compelling interest in protecting the physical and psychological well-being of minors"]; Ginsberg v. State of New York (1968) 390 U.S. 629, 639, 88 S.Ct. 1274, 20 L.Ed.2d 195 ["The well-being of its children is of course a subject within the State's constitutional power to regulate"] [regarding statute regulating obscenity for minors]; In re Marilyn H. (1993) 5 Cal.4th 295, 307, 19 Cal.Rptr.2d 544, 851 P.2d 826 ["the welfare of *117 a child is a compelling state interest that a state has not only a right, but a duty, to protect"] [juvenile dependency case]; H.S. v. N.S. (2009) 173 Cal.App.4th 1131, 1142, 93 Cal.Rptr.3d 470 [state has "compelling interest in protecting the child's well-being"] [child custody case]; Berry v. City of Santa Barbara (1995) 40 Cal.App.4th 1075, 1080, 1085, 47 Cal.Rptr.2d 661 [ordinance prohibiting material "harmful to minors" from being publicly displayed unless blinder racks cover the lower two-thirds of the material was aimed at "protect[ing] minors from exposure to harmful matter" and thus served a "compelling state interest"].)
Of course, the above cases arose in different factual contexts subject to different standards. However, the fundamental notion the government has a compelling interest in protecting minors from harm applies in this context as well. Several out-of-state cases have held as much. (See Olmer v. City of Lincoln (8th Cir. 1999) 192 F.3d 1176, 1180 [city had compelling interest "in protecting very young children from frightening images" of aborted fetuses], overruled in part on different issue by Phelps-Roper v. City of Manchester (8th Cir. 2012) 697 F.3d 678, 692 ; Saint John's Church in the Wilderness v. Scott (Colo. App. 2012) 296 P.3d 273, 283-284 ( Saint John's ), cert. denied [government has "compelling interest in protecting children from exposure to certain images of aborted fetuses and dead bodies"]; Bering v. SHARE 106 Wash.2d 212, 237, 241, 721 P.2d 918 (1986) [state has "compelling interest in avoiding subjection of children to the physical and psychological abuse inflicted by the [abortion] picketers' speech" using the words " 'kill' " and " 'murder' "]; see also Frye v. Kansas City Missouri Police Dept. (8th Cir. 2004) 375 F.3d 785, 791, fn. 2 [suggesting in dicta there may exist a compelling interest in protecting minor children from viewing photographs of mutilated fetuses].)
Of course, " '[m]inors are entitled to a significant measure of First Amendment protection,' " and the state lacks "a free-floating power to restrict the ideas to which children may be exposed." ( Brown v. Entertainment Merchants Ass'n. (2011) 564 U.S. 786, 794, 131 S.Ct. 2729, 180 L.Ed.2d 708 ( Brown ).) But protecting young children from substantial or long-lasting psychological or emotional harm caused by exposure to horrifying and graphic speech may serve a compelling state interest, assuming the proponent of the restriction establishes young children would in fact suffer this type of harm.
Here, the image in question is a poster with the words "Dead 8 week human embryo moments after abortion." The image on that poster shows a dead fetus, with its head, face, spinal cord, arms, fingers, and body all visible and identifiable, and with *409 the head clearly severed from the body. Because *118 strict scrutiny applies, Defendant must establish its prohibition on this "grisly and gruesome" image is (1) necessary to serve the compelling interest of protecting the physical and psychological well-being of its younger patrons and (2) the least restrictive means to achieve that interest. Defendant failed to make this showing.
Although this image conceivably might bother or even traumatize some children, Defendant presented no evidence - no percipient witness testimony, no expert witness testimony, no studies or scientific reviews, or other evidence[5] - on whether, how, or to what extent viewing that image would negatively impact children or whether the negative impact might vary by age group. Defendant's witness testified the centers are premier family-oriented shopping centers often frequented by young children and adolescents, but Defendant failed to provide any evidence about why it considers the centers "family-oriented." Defendant presented no evidence or data on how often young children are present in the areas in question, at what times they are typically present, what age ranges are most common, or how many children visit either center on a given day. Nor did Defendant provide evidence on whether the centers contain certain stores, restaurants, attractions, rides, or other activities that might hold special attraction for children.
On this limited record, I cannot say Defendant "specifically identif[ied] an 'actual problem' in need of solving ... [or proved] the curtailment of free speech [is] actually necessary to the solution." ( Brown, supra , 564 U.S. at p. 799, 131 S.Ct. 2729.) Defendant therefore failed to show its restriction served a compelling government interest. To be clear, my "concern in the present case is not with the general proposition that protecting youth is a compelling government interest, but is instead with the record." (See Operation Save America v. City of Jackson (Wyo. 2012) 275 P.3d 438, 461 [restraining order against use of images of aborted and dismembered fetuses was unconstitutional where there was "no evidence concerning the injury or potential injury to children from viewing the images displayed"].)
*119 Defendant also failed to establish its restriction is narrowly tailored.[6] To survive strict scrutiny, a restriction must be narrowly drawn to achieve the compelling government interest. ( Brown, supra , 564 U.S. at pp. 804-805, 131 S.Ct. 2729 ["Even *410 where the protection of children is the object, the constitutional limits ... apply."].) For this reason, "[b]lanket bans on signs with images of aborted fetuses have not survived the narrow tailoring requirement." ( Saint John's, supra , 296 P.3d at p. 284 [collecting cases].) Defendant's blanket prohibition against grisly and gruesome imagery applies regardless of whether "younger patrons" are present and thus is not narrowly tailored to serving the alleged "compelling interest [of] shielding its younger patrons" from harmful imagery. Moreover, there are presumably other means of protecting children from harm that are less restrictive of speech. Because Defendant's restriction against all grisly and gruesome imagery is drawn more broadly than necessary to achieve Defendant's stated interest, it does not pass the strict scrutiny test.

Defendant asserts the prohibition serves the "compelling interest [of] shielding its younger patrons" from grisly or gruesome imagery, citing Sable Communications of California, Inc. v. F.C.C. (1989) 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (Sable ) for the notion that the government has "a compelling interest in protecting the physical and psychological well-being of minors." The majority's opinion does not conclude that can never be a compelling interest; it holds only that "Defendant has not met its burden of justifying the grisly or gruesome restriction" on this record. (Maj. opn. ante , at p. 402.)

The trial court apparently thought it was self-evident that the image in question was grisly and gruesome, noting the picture "is gruesome or grisly.... I don't think I need to say why, but it is." But whether and to what extent something causes harm to children is not always self-evident. For example, in Brown, supra , 564 U.S. at pp. 799-800, 131 S.Ct. 2729, the government's evidence at best showed a correlation, but not a "direct causal link," between violent video games and aggressive behavior in minors, and the Supreme Court therefore reasoned the law restricting sale of those games to minors did not serve a compelling government interest. At some point, however, the harm to young children from viewing extremely graphic and morbid images (e.g., depictions of torture or mutilation) is self-evident, and therefore scientific evidence or studies would not be necessary to show causation. This is not such a case.

The majority, while declining to reach the narrow tailoring component of strict scrutiny, observes that "some parents may not care whether their kids are exposed to grisly or gruesome images," a consideration that seemingly addresses whether the restriction is narrowly tailored. (Maj. opn. ante , at p. 402.) Whether parents care if their children are exposed to the image in question is not relevant, in my opinion, because Defendant drafted the restriction to achieve the compelling interest of directly protecting children, not to aid parents in supervising what their children may view.