Filed 1/29/25  Wang v. Jiang CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GUI WANG, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> YUANZHAO JIANG, <br><br> Defendant and Appellant. | B324791 <br><br> (Los Angeles County <br> Super. Ct. No. 22STFL04483) |

APPEAL from an order of the Superior Court of Los Angeles County, Bradley S. Phillips, Judge. Affirmed.

Yuanzhao Jiang, in pro. per., for Defendant and Appellant.

Lucya Kim and Corilee Racela for Plaintiff and Respondent.

# INTRODUCTION

Appellant Yuanzhao Jiang (Jiang) appeals from the issuance of a domestic violence restraining order (DVRO) against him in favor of respondent Gui Wang, and their daughter, Mingxin Jiang. He contends the trial court violated his due process rights when it declined to further continue the hearing for Jiang to retain a lawyer, and failed to provide him an adequate opportunity to cross-examine Wang and present evidence. He further argues the trial court's order violates his Second Amendment right to bear arms, and improperly deprives him of custody of his daughter. We reject these contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize here only the facts and procedural history relevant to our resolution of this appeal.

Jiang and Wang were married for 13 years, and they have a 14-year-old daughter together. Although Wang filed for dissolution of marriage on April 25, 2022, the parties continued to reside together until the incident described below on June 13, 2022.

The following facts are taken from Wang's testimony at the hearing on the DVRO. On the morning of June 13, 2022, Wang and her daughter were sleeping next to each other, and Jiang was in the other room. Wang then felt someone touching or groping the inside of her thigh and genitals. She woke up and saw Jiang standing there touching her, so she tried to push his hands away. In response, Jiang became very angry and put his

hands around Wang's neck to choke her. Wang cried out, which caused their daughter to wake up. Their daughter then grabbed Wang's cellphone underneath the pillow to call 911. Jiang then "forcibly tried to open [their] daughter's hands and snatch the cellphone." Wang sustained injuries on her neck and their daughter sustained scratches on her arm.

After Jiang fled the residence with Wang's cellphone, their daughter used an alternate cellphone to call the police. The police arrived and issued an emergency protective order against Jiang.

On June 17, 2022, Wang filed a request for a DVRO against Jiang and in favor of her and their daughter. The court granted a temporary restraining order (TRO) pending a hearing on the DVRO, prohibiting Jiang from, among other things, harassing, attacking, threatening, assaulting or disturbing the peace of Wang and their daughter. The TRO also prohibited Jiang from owning, possessing, receiving, or in any other way getting a gun, other firearm, or ammunition. The court further granted Wang legal and physical custody of their daughter, with no visitation pending the DVRO hearing.

On August 23, 2022, Jiang filed a response to Wang's request for a DVRO, which included his 8-page declaration and 71 pages of attached exhibits. He also filed his own request for a TRO against Wang on August 24, 2022, which the court denied pending a hearing.

At the August 29, 2022 hearing on Wang's request for a DVRO, Jiang appeared without counsel. The court granted Jiang's request that the court continue the hearing so he could retain an attorney. The trial court also continued the hearing on

3

Wang's request for a DVRO until September 28, 2022, and set the hearing for Jiang's request for a DVRO on the same date.

On September 28, 2022, Jiang again appeared on behalf of himself. He stated that most attorneys were not willing to take his case because of the TRO against him, and the only attorney willing to represent him is not available "until March next year." After informing Jiang that he would have an opportunity to cross-examine Wang, the court proceeded with the hearing. After hearing testimony from Wang and Jiang, including Jiang's cross-examination of Wang, the court concluded the hearing by stating: "So the court finds that all the parties have had ample opportunity to prepare for today's hearing, including a continuance that was granted to respondent at the last hearing at which time the court told the respondent directly that it would be the only continuance with respect to the hearing. [¶] So the court, having . . . read all of the papers and having listened to the testimony of [Wang] and [Jiang], finds that [Wang] easily satisfied her burden of proving by preponderance of the evidence that respondent has committed acts of abuse both physical and emotional against [Wang] and against their daughter, who is another protected party under the restraining order." It further found that Wang was a "very credible witness," and that Jiang "[was] not a credible witness."

Based on these findings, the court issued a five-year DVRO against Jiang and in favor of Wang and their daughter. The court further ordered that Jiang "may not own, possess, have, buy, or try to buy, receive, or try to receive, or any other way get guns or other firearms or ammunition. The court also ordered that Jiang

4

complete a 52-week batterer intervention program and provide proof of completion of that program to the court. Finally, the court granted sole legal and physical custody of the child to Wang pursuant to Family Code section 3044.[1] The court ordered no visitation for Jiang, but informed him that he may apply for a modification of the no-visitation order upon completion of at least 10 individual therapy sessions with a licensed psychotherapist to discuss parenting and anger management.

Jiang timely appealed.

## DISCUSSION

### I. Fundamental Procedural Principles

It is a fundamental rule of appellate review that a trial court's order or judgment is presumed correct, and the appellant bears the burden to demonstrate prejudicial error. "'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) All contentions of error asserted in appellant's brief must include coherent analysis and discussion, supported by pertinent authority reflecting the logical and legal analysis by

---

1 Family Code section 3044, subdivision (a) provides, in part: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child, or against the child . . . , there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child . . . ."

which the appellant reached the conclusions he urges us to adopt. (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007.) The appellant's arguments must "be tailored according to the applicable standard of appellate review." (*Sebago, Inc. v. City of Alameda* (1989) 211 Cal.App.3d 1372, 1388), and failure to do so may be considered a concession that an assertion lacks merit. (*James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021.)

That Jiang is self-represented does not exempt him from these rules. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) He is entitled to "'the same, but no greater consideration than other litigants and attorneys. [Citation.]'" (*Id.* at p. 1247; *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639, fn. omitted [self-represented litigant is bound by the "same restrictive rules of procedure as an attorney [Citation]"].)

## II. Jiang Has Not Met His Burden to Show the Trial Court Erred by Granting Wang's DVRO

### A. The Trial Court Did Not Violate Jiang's Due Process Rights

Jiang contends the trial court did not provide him with sufficient time to retain a lawyer before the hearing on the DVRO, and therefore, the court "violated [his] right to 'due process.'" For the reasons discussed below, we conclude the trial court was well within its discretion in declining to further continue the hearing on the DVRO.

The Domestic Violence Protection Act (DVPA) (Fam. Code, § 6200 et seq.) "'provide[s] expedited and simplified procedures for victims of violence, abuse, and harassment to obtain

6

temporary and permanent restraining orders to protect them.'" (*Malinowski v. Martin* (2023) 93 Cal.App.5th 681, 694.) Under Family Code section 245, subdivision (b), "[e]ither party may request a continuance of the hearing, which the court shall grant on a showing of good cause."

As discussed above, Jiang filed his response to Wang's request for DVRO on August 23, 2022, and the court held the initial hearing on August 29, 2022. Jiang requested the trial court continue the hearing, however, so that he could hire an attorney and for his "health condition [to get] better[.]" In response to the court's question regarding what sort of continuance he was seeking, Jiang backtracked and stated he is "debating" because if he continues the case too long and Wang is still "in possession and control of the money" he will not "be able to afford an attorney . . . [or] get [ ] medical attention . . . ." The court ultimately continued the hearing for 30 days (i.e., until September 28, 2022), but warned Jiang that even if he did not retain an attorney within that time, the court would still proceed with the DVRO hearing on that date.

By the time of the September 28, 2022 hearing, Jiang had over three months from the date Wang filed her request for a DVRO to retain counsel. He claimed, however, that lawyers were unwilling to take his case because of the TRO against him, except for one lawyer who would not be available until March of 2023. He provided no other details regarding the identity of the lawyer or the lawyer's supposed scheduling conflicts.

On this record, we conclude Jiang had ample time to retain counsel, and the trial court did not abuse its discretion in finding

no good cause existed to grant a further six-month continuance based on Jiang's unsubstantiated assertions. (See *People v. Bentley* (2020) 55 Cal.App.5th 150, 152-153 (*Bentley*) ["The trial court has broad discretion to determine whether good cause exists to continue a hearing date[ ]" and that discretion must not be disturbed on appeal except "'"on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]" [Citation.]'"].)

Jiang next argues the trial court violated his due process rights for the following additional reasons: the court failed to provide him an adequate opportunity for cross-examination; did not allow him to present evidence; did not permit him "to seek witnesses to testify"; and did not allow him "to make closing arguments[.]" Our review of the record, however, demonstrates otherwise.

First, the trial court provided Jiang ample time to cross-examine Wang and for Jiang to present evidence. With respect to cross-examination, the court demonstrated great patience with Jiang when he repeatedly asked Wang questions wholly irrelevant to the issue of alleged abuse. For example, after repeatedly reminding Jiang that the focus of his cross-examination was to address the allegations of abuse against him, the court again stated: "Sir, let me—let me tell you again. You need to ask questions relevant to—to the allegations of abuse, and I'm going to give you another two minutes. [¶] So go ahead."

Moreover, Jiang submitted his own 8-page, single-spaced declaration, along with 71 pages of attached exhibits. He argues

8

on appeal that if he was represented, the lawyer would "submit evidence" so that Wang's "perjury can be easily identified and overturned." But Jiang was permitted to submit evidence without a lawyer. And, as discussed above, the trial court was well within its discretion in declining to further continue the hearing for Jiang to retain a lawyer.

We likewise reject Jiang's argument that he was not provided an opportunity to subpoena witnesses. He did not subpoena witnesses prior to the September 28, 2022 hearing. Rather, while he was testifying at the hearing, Jiang concluded by stating: "And also I would like the police, the people from [the Department of Children and Family Services], the teachers, the doctors, the psychiatrists, I hope they can all come to testify, but because my English is not good so I don't know how to ask them to come here." The trial court properly exercised its discretion in declining both to provide Jiang with additional time to subpoena witnesses, and to set a further hearing on the DVRO. (See *Bentley, supra,* 55 Cal.App.5th at pp.152-153.)

Lastly, Jiang does not point to any statute or caselaw that requires a "closing argument" at a DVRO hearing. "'The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) Those requirements have been satisfied here.[2]

---

2    We reject as unfounded Jiang's claims of judicial bias. In any event, Jiang's  failure to object in the trial court to the court's

9

## B. The Firearms Prohibition Did Not Violate Jiang's Constitutional Rights

Jiang next argues the DVRO violated his Second Amendment right to bear arms because he does not "pose a 'danger' to [Wang]" and Wang "forged a domestic violence restraining order in order to obtain an advantage in divorce."

Under Family Code section 6389, subdivision (a), a person subject to a DVRO "shall not own, possess, purchase, or receive a firearm or ammunition while that protective order is in effect . . . ." Contrary to Jiang's assertion, section 6389 does not violate the Second Amendment. (See *e.g. Zachary H. v. Teri A.* (2023) 96 Cal.App.5th 1136, 1145 [Family Code section 6389 is constitutional; recent United States Supreme Court case law (see *N.Y. State Rifle & Pistol Ass'n v. Bruen* (2022) 597 U.S. 1, 72) which reaffirmed the guarantee of the Second Amendment right of "'law-abiding responsible citizens'" to possess firearms does not call into question the lawfulness of firearms restrictions imposed on individuals subject to restraining orders]; see also *United States v. Rahimi* (2024) 602 U.S. 680, 702 ["An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment"].)

---

alleged bias forfeits the issue on appeal. (See *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218 [appellants "did not preserve their claim of judicial bias for review because they did not object to the alleged improprieties and never asked the judge to correct remarks made or recuse himself"].)

To the extent Jiang is arguing that the court's findings do not support the issuance of a DVRO, including the prohibition against possessing firearms, he has forfeited this contention. (See *Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 512-513 ["""A party who challenges the sufficiency of the evidence to support a particular finding must summarize the evidence on that point, favorable and unfavorable, and show how and why it is insufficient"""" and unless """"this is done the error is deemed [forfeited]"""'] (italics omitted).) Jiang's one-sided narrative, coupled with repeated claims that Wang lied during her testimony, does not come close to demonstrating insufficient evidence supports the trial court's findings.

### C. The Trial Court Did Not Err By Granting Wang Sole Physical and Legal Custody of Their Daughter

Although not entirely clear, Jiang's final argument regarding the court's custody order appears to be premised on the incorrect notion that he was entitled to appointed counsel because the court "deprived [him] of custody . . . of his daughter." We acknowledge that "California statutory law has long required the appointment of counsel in connection with parental rights termination proceedings." (*In re A.R.* (2021) 11 Cal.5th 234, 246, citing Welf. & Inst. Code, §§ 317, 317.5, 366.26, subd. (f)(2).) But here, the trial court did not terminate Jiang's parental rights. Rather, the court issued a temporary custody order pursuant to Family Code section 3044, and the court expressly informed Jiang of his right to file a request to modify the order upon completion of 10 therapy sessions.

Moreover, Jiang's attempt to analogize DVRO proceedings to paternity proceedings is unavailing. In *Salas v. Cortez* (1979) 24 Cal.3d 22, 34 (*Salas*), our Supreme Court held indigent defendants in paternity proceedings prosecuted by the state are constitutionally entitled to appointed counsel. It reasoned: "An adjudication of paternity may profoundly affect a person's life. It may disrupt an established family and damage reputations. Further, a court's determination of paternity exposes a defendant to deprivation of property and, potentially, liberty. It entails the obligation to support and educate a child [citation], an obligation that does not end at the child's age of majority. [Citation.] . . . [¶] Failure to support a child may also be prosecuted criminally." (*Id.* at pp. 28-29, fn. omitted.) The Supreme Court further explained the complexity of paternity proceedings: "Without the assistance of counsel, neither [defendant] was in a position to respond adequately to the district attorney's discovery requests nor to initiate discovery himself. Without the assistance of counsel, neither was able to procure the assistance of experts to perform blood group tests which might conclusively have exonerated him. Each was found to be the father of a child on the basis of (1) alleged facts which were deemed admitted because not contradicted, and (2) testimony of the mother which was not subjected to cross-examination. In short, without the assistance of counsel, neither appellant was able to defend against the allegations of the complaint. As a result, each was named the father of a child by involuntary default." (*Id.* at pp. 30-31, fns. omitted.)

While we do not discount the fact that a custody order issued in DVRO proceedings—even one that is temporary and modifiable—may greatly impact a parent's life, it has no other similarities to a paternity judgment. DVRO proceedings are streamlined and generally not complex: each party had an opportunity to testify regarding the alleged abuse, and to cross-examine the other. The trial court then made a credibility determination based on documentary evidence and testimony at the hearing. We therefore decline to extend the narrow holding in *Salas* to DVRO proceedings.

## DISPOSITION

The DVRO issued on September 28, 2022 is affirmed. Wang is awarded her costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, P. J.

We concur:

COLLINS, J.

MORI, J.